House *v.* Metcalf.

———•◄◄●►►•———

CHAUNCEY B. HOUSE *vs.* TIMOTHY E. METCALF.

A grist mill was erected in 1703. Three years after a highway was laid out, running by it and distant twenty-one feet from it. The mill had been kept

House *v.* Metcalf.

up ever since in the same place, but in 1824 an overshot wheel was substituted in the place of a former undershot one. This wheel was on the outside of the mill, forty-seven feet from the highway, uncovered and in full view from the road, and when in motion was an object at which horses would naturally be frightened. In 1857 the plaintiff was riding by in a sulky, when his horse was frightened by the wheel and ran, and he was thrown out and hurt. In an action for damages brought against the owner of the mill, it was held :

1. That evidence was admissible of other instances in which horses were frightened in passing, for the purpose of showing that the wheel was such an object as would naturally frighten horses, and therefore a nuisance.

2. That the question whether the defendant, by the use of the mill, in the condition in which it was at the time of the accident, since the year 1824, had acquired the right to continue such use, was one of fact and not of law—the use for such a length of time, if it could have any effect in establishing the right, being merely evidence of a grant to be considered by the jury, and not conclusive evidence. But whether a right to maintain a public nuisance can be thus acquired : *Quere.*

3. That proof that the plaintiff was riding in a *sulky*, and that his horse became frightened and the sulky was *overturned and he thrown from it upon the ground,* was no legal variance from the allegation of the declaration, that the plaintiff was riding in a *buggy* and that his horse *ran and fell* and by that means he was thrown out—the details thus alleged being wholly unimportant in their relation to the personal injury received by the plaintiff.

4. That there was no legal variance between the allegation that the mill was within the inclosed limits of the highway, and the proof that it was outside of the legal highway, as the only important question was, as to the character of the mill as a nuisance in respect to its frightening horses, and not as a nuisance from its obstructing the highway.

5. That the defendant was not saved from liability for the injury suffered by the plaintiff, by the fact that the mill was leased at the time to another person, who was running it, and had exclusive control of it, the mill being in the same condition as when the lease was made, and being used by the tenant in the manner contemplated when it was leased, and the defendant receiving a stipulated compensation for such use.

ACTION on the case for damage from a nuisance. The declaration alleged that the defendant, on the 21st day of March, 1857, was possessed and in the actual occupation and use of a certain grist mill, in the town of Lebanon, erected within the inclosed limits of a certain highway and within twenty feet of the traveled path, which was operated by a large overshot water wheel, uninclosed and uncovered, which when in motion was calculated to frighten horses; that the mill and wheel were, and ever since they had been erected

had been, a public nuisance; and that, on said 21st day of March, the plaintiff was driving by the mill, along the traveled path, in a buggy, with a valuable horse belonging to him, and was using care and skill in driving, when the horse became frightened at the water wheel, which was in motion, and to such a degree that the plaintiff could not control him, and ran with great violence until he fell and threw out the plaintiff with great force upon the ground, hurting him seriously, and greatly injuring the horse and breaking the buggy in pieces. The case was tried to the jury, on the general issue.

On the trial, the plaintiff, for the purpose of shewing that the mill was a nuisance, offered one Arabella Cobb as a witness, to prove that in the year 1844, when the mill was the same in all respects, she was driving along the highway leading by the mill, when the wheel was in motion, and that her horse became frightened thereby. The plaintiff did not claim that this fact was ever known to the defendant. To the admission of this testimony the defendant objected, but the court admitted it.

The plaintiff offered evidence to prove, that on the 21st day of March, 1857, he was driving by the mill with a horse and sulky, and that his horse became frightened at the motion of the wheel, by means of which he was overturned and injured, both in his person and in his horse and sulky. The defendant objected to this evidence on the ground of a fatal variance between it and the declaration. The court overruled the objection and allowed the testimony to go to the jury, but in the charge to the jury instructed them that the plaintiff could not recover for any injury done to the sulky, on account of its not being described in the declaration.

The defendant offered evidence, and claimed to have proved that the mill was an ancient one, built in the year 1703, upon lands of one Joseph Parsons, upon a contract with the proprietors of the town of Lebanon, for the erection of which he acquired all rights to the stream upon which it stands, and one hundred and twenty acres of land lying

upon the stream; that three years after the erection of the mill, the highway mentioned was laid out, being eight rods in width, and that the mill was upon no part of the highway but was twenty-one feet therefrom; that the mill continued to stand upon the foundations on which it was first erected until the year 1810, when it was re-built in its present shape upon its ancient foundations, being two feet less in width and two feet further from the highway; that the wheel had always been upon the outside of the mill, a distance of forty-seven feet from the highway, and in full view from all parts of the road for a distance of sixteen rods; and that, down to the year 1810, the mill had always been operated by an undershot wheel, sixteen feet in diameter, at which time a breast wheel was substituted, being eighteen feet in diameter, and which was continued in use until 1824, when the defendant and others purchased the mill, and substituted the present overshot wheel, which was six feet less in diameter, and sunk into the earth two feet lower on its axle. The defendant requested the court to charge the jury, that if they found the facts thus claimed by the defendant to be true, and the highway to have been laid out after the erection and occupation of the mill, then, although the plaintiff might have suffered injury, yet the defendant was not liable for it, and that the defendant's mill could not be made a nuisance by the subsequent laying out of the highway; but the plaintiff did not complain of the mill as it was previously to 1824, and admitted that it was not a nuisance up to that time, but claimed that the change made from an undershot to an overshot wheel constituted it a nuisance. The court did not charge the jury as requested by the defendant.

The defendant further requested the court to charge the jury, that he had a right to make all needful and proper alterations in the wheel of his mill, if the same was not a substantial change in its use. But the court did not so instruct the jury.

The defendant further requested the court to charge the jury, that if they found that the mill had, for a period of thirty years next preceding the accident, been run in the

condition it was in at the time of the accident, he had a right to maintain it in the same condition, and to use it in the same manner, without being liable for any injury, like that claimed by the plaintiff, resulting from such use. But the court did not so charge the jury.

The defendant further requested the court to charge the jury, that, unless they were satisfied that the mill was within the limits of the legal highway, there was a fatal variance between the proof and the declaration. The court did not so charge the jury, but instructed them that, if they should find that the mill was within the inclosed limits of the highway, there was no variance.

The defendant offered evidence to prove, and claimed to have proved, that at the time of the injury the mill had been let by parol to one Hinckley, for the term of one year, in consideration of the sum of $20, and one half of the tolls received at the mill, to be paid as the annual rent; that by the terms of the agreement the defendant had no control over the premises, but that the same were to be in the exclusive occupancy and control of Hinckley; and that Hinckley, at the time of the accident, was in the exclusive possession of the premises, under the agreement, and running the mill; and the defendant requested the court to charge the jury, that, if they found these facts to be true, the plaintiff could not recover. The court did not so charge the jury, but instructed them that if they found the facts as the defendant claimed them to be, this would not prevent the plaintiff's right to recover, and thereupon required the jury, if they found a verdict for the plaintiff, to find also in connection with their verdict the facts with regard to the lease and occupancy, submitting to them certain written questions for the purpose. The jury returned a verdict for the plaintiff for $200; and, in connection with the verdict, specially found that the defendant let the mill to Hinckley, for the year within which the injury to the plaintiff occurred—that the terms of the contract of letting were, that Hinckley was to run, occupy and improve the mill for the year, in the condition it then was in, paying $20 in money, and one half of

the earnings of the mill, by way of rent—and that Hinckley entered into possession of the mill under the agreement, and was running the mill under the agreement at the time of the injury to the plaintiff, the mill being then in the condition it was in at the time of the letting.

The defendant moved for a new trial for error in the admission of evidence, and in the neglect of the court to charge the jury as requested by him.

*Chapman* and *Warner*, in support of the motion.

*Dutton* and *Culver*, contra.

SANFORD, J. 1. The defendant claims that the testimony of Arabella Cobb, to prove that the same wheel which frightened the plaintiff's horse also frightened hers, ought not to have been received.

We think it was properly admitted. The plaintiff's claim was, that the wheel in motion was an object naturally calculated to frighten horses traveling on the public road, and was, therefore, a public nuisance. And we think he had a right, not only to show the facts regarding its size, form, location, exposure to view, and mode of operation, from which the jury might infer what effects it would naturally, necessarily, or probably produce, but also to prove what effects it had produced in fact. A single instance would indeed be of little avail standing alone. A number of instances might afford satisfactory, if not demonstrative, evidence. And the inquiry in every such case is, not whether the evidence offered is sufficient to prove the fact claimed, but whether it tends to prove it.

It is claimed that the evidence was objectionable because it presented a new issue to the triers, and operated as a surprise upon the defendant. That the reception of the evidence rendered proper an inquiry into the character of Miss Cobb's horse, and her ability to manage him, and, indeed, into all of the circumstances under which the accident occurred, is not to be denied; as the value of the result always depends upon the fairness of the experiment, and

the triers can not know how to appreciate the one, until the other is made known to them. But every piece of evidence, introduced in any case, is, or may be, subjected to the same or similar tests, and can not for that reason be rejected. And because the fact to be established, to wit, that the wheel was an object of terror to horses, was directly involved in the issue on the record, and the evidence objected to tended to establish it, and therefore to prove the issue, the defendant was bound to come prepared to meet it. It was of no importance that the defendant was ignorant of Miss Cobb's misfortune. The question was, whether testimony that her horse was frightened by the wheel conduced to prove that wheel a nuisance; and the defendant's ignorance of the accident had no bearing on the question.

2. The defendant claims that there was a fatal variance between the declaration and the proof, in regard to the vehicle with which the plaintiff was traveling, and in regard to the manner in which his injuries were inflicted.

We think this question was properly disposed of by the superior court. Whether the evidence that the plaintiff's carriage was a sulky, instead of a buggy, as alleged in the declaration, was objectionable on the ground of variance, or not, the jury were instructed to allow no damages for an injury to the sulky, so that no injury can have accrued to the defendant from the reception of the evidence in the first instance, and a new trial ought not to be granted on account of it.

But we think no case of variance is stated in the motion. Whether the plaintiff was thrown to the ground and injured, by the running and falling of the horse, or by the running of the horse and the overturning of the carriage, was of no importance whatever. Indeed, there is no substantial difference in this respect between the allegation in the declaration and the proof as stated in the motion. Between the acts of riding or driving in a buggy, and riding or driving in a sulky, there is, indeed, a natural and necessary difference; they can not be the same; but it by no means follows, that, because of that difference, there was a legal variance between the declaration and the proof. Suppose that the plaintiff had

alleged that, at the time of the accident, his carriage was green or his hat white, would his right of recovery have been affected by proof that the one was red and the other black? A variance is a disagreement between the allegations and the proof in some matter which, in point of law, is essential to the charge or claim. When such disagreement appears the evidence is rejected, because, otherwise, the defendant would be surprised by proof of a claim of which he had had no notice by the declaration. But the correspondency required between the allegations and the proof is a legal, not necessarily a natural one. That is, it is requisite in those particulars only which are in themselves essential to the claim, or which in some way qualify those which are, by their connection with them, in the mode of statement, and so become essential. And when the whole of an allegation may be stricken out without affecting those which remain, and leaving sufficient allegations to maintain the claim, that allegation may be treated as surplusage, and entirely disregarded. Now the allegation that the plaintiff was passing with his buggy, was, in itself, no more essential to his right of recovery than the color of his hat.

The fact stated as the foundation of the defendant's liability, is, that the wheel was calculated to frighten horses passing by the mill along the road. That was an essential allegation. And then it was equally essential, to state that the plaintiff's horse was passing by the mill along the road, and was frightened by the wheel, but in what kind of carriage was of no importance; the effect of the wheel upon the horse neither being, nor in the declaration alleged to be, at all dependent upon his connection with any carriage whatever.

Nor does the immaterial allegation that the plaintiff was traveling with a buggy, become essential or material, by its statement in the same sentence with the material one relating to the horse; because the latter is in no wise qualified or affected by the former. All that is said in the declaration about the buggy, may be stricken out, without in the least affecting those material allegations which remain or the plaintiff's right to recover in the action.

3. It being admitted, that prior to 1824 the wheel which then propelled the mill was not a nuisance, and the plaintiff claiming that, by the substitution in 1824 of the present overshot wheel for the former undershot one, the nuisance was created, the question made by the defendant, whether, by the laying out of the highway after the erection and use of the defendant's mill and wheel, that mill and wheel could be made a nuisance, was an immaterial question, regarding which the judge was under no obligation to express an opinion to the jury, because it was inapplicable to the state of facts before them. The judge's omission to comply with the defendant's request in this particular, therefore, affords no ground for a new trial.

4. So, too, the charge requested in regard to alterations of the wheel, was properly refused, because uncalled for. The plaintiff's claim was, that the present overshot wheel, put in in 1824, was a nuisance, and *the* nuisance which caused his injury, and no evidence whatever was offered that any alterations had been made in it since its first erection. Why should the jury be perplexed by the announcement of a legal proposition of no practical importance in the case?

5. The defendant requested the court to charge the jury, that if his mill had been run for thirty years next before the accident, in the same condition in which it was at that time, he had a right so to run it, and was not liable for such accident.

There is no doubt but that less than thirty years enjoyment of an easement in the land of another, or thirty years continuance of a private nuisance, affords evidence from which the jury may presume and find, as a fact, the existence of the right, derived from the owner of the property affected, by grant or otherwise. But the evidence arising from such enjoyment or continuance may be rebutted, and the court can not decide, as a matter of law, that such enjoyment or continuance confers the right. And if, in like manner, thirty years continuance of a public nuisance affords similar evidence, (a point which it is not now our intention to decide,) that evidence must be submitted to the jury, for them to

make the proper inference, and decide the question whether the right has been acquired or not. The question is one, not of law, but of fact, and the court could not determine it. Upon this ground therefore, the omission of the judge to give the instruction prayed for was not erroneous

6. The defendant claimed that the highway on which the accident occurred was laid out eight rods wide, and that the mill and wheel were beyond the limits of the highway as thus established, and he prayed the court to charge the jury, that if they found that the facts were as he claimed, then there was a fatal variance between the declaration and the proof which must defeat the plaintiff's action.

What was the *practical* width of the highway—how much ground was in fact inclosed and used as highway—no where appears. And whether the wheel was within or without the legal as distinguished from the practical limits of such highway, was unimportant—its injurious character arising, not from its interposing any material obstacle in the way of travelers on the road, but from its rendering traveling there unsafe, by the effect which the sight of it produced upon their horses. And besides, the averment in the declaration is, that the mill and wheel were situated, not within the highway as laid out, but only "within the *inclosed* limits of a certain street or highway in," &c. And the charge on this point is in the identical language of the averment. We think the defendant has no just cause to complain of the charge in this particular.

7. The defendant contends that, the mill being at the time of the accident in the exclusive occupation of his tenant, and he having no rightful control over it during the continuance of the tenancy, he was for that reason exonerated from all liability for injuries occasioned by its use. But every one who aids, abets, instigates, authorizes or commands, as well as every one who actively participates in, the commission of a tort, is himself a principal tort-feasor, and liable as such. And the facts claimed by the defendant and found by the jury, that, at the time of the accident, the wheel was in the same condition as when the lease was made—that it was used in the manner contemplated and intended by the par-

ties to the lease—and that, for such use, the defendant was to be paid his stipulated compensation by way of rent—so far from exonerating him from, establish his legal liability for, the plaintiff's injury.

Upon the whole, therefore, we think the verdict ought not to be disturbed.

In this opinion the other judges concurred.

New trial not advised.

# SUPREME COURT OF ERRORS.

## TOLLAND COUNTY, NOVEMBER TERM, 1858.

Present,

STORRS, C. J., HINMAN, ELLSWORTH AND SANFORD, JS.