THE cases printed in the remaining pages of this volume were decided on and after January 1, 1901, and were reported by HENRY W. SWIFT, who assumed the duties of Reporter of Decisions on that day.

═══════

### INHABITANTS OF ROCKPORT *vs.* ROCKPORT GRANITE COMPANY.

Essex.     March 20, 1900. — January 1, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

A "motion" man in a Rockport quarry whose payments to the quarry owner are by way of "stumpage" is a licensee carrying on work on his own account on the land of the quarry owner, and is not a tenant.

If a derrick is maintained by a licensee on the land of his licensor with a guy stretched across a highway so low as to be dangerous to persons driving over the way, and the owner of the land knows of its existence and suffers it to remain there, this constitutes a nuisance, and such landowner is liable to any one injured thereby, although the derrick was erected before he became the owner of the land.

CONTRACT, with a count in tort, to recover the amount of a judgment recovered by one Lucas against the inhabitants of Rockport, for injuries received by him while travelling upon a highway in said town by reason of a defect in the highway, together with certain expenses incurred by the town in the defence of said action. Writ dated June 3, 1897. Trial in the Superior Court, before *Bishop*, J.

It appeared at the trial that Lucas was injured February 26, 1895, while travelling on a street in the plaintiff town, by coming in contact with the guy of a derrick stretched across the way. He recovered judgment against the town on the ground that the guy constituted a defect in the way. The town contended that the defendant was responsible for the guy rope, and gave the defendant notice to defend the suit of Lucas.

The guy rope was suspended from a derrick in a ledge upon land which belonged to one Canney prior to October 26, 1894. On that day Canney, by a written agreement, agreed to convey the land and quarry to the defendant in fee, transferring immediate possession. Subsequently Canney conveyed the land and quarry to the defendant in fee by two deeds, one dated February 9, and the other February 11, 1895.

It appeared that at the times of the agreement and conveyances mentioned one Littleback operated a " motion " upon the premises, originally held from Canney, and had erected there the derrick, which he hired from the defendant; that afterwards this " motion " was transferred to one Hill, who operated it at the time of the injury to Lucas, and the defendant contended, that by reason of Hill's possession and control under the " motion " the defendant had not such control of the derrick and guy rope as to render it liable.

Hill was quarrying stone on the land, cutting it into paving blocks, for which the defendant paid him $33 a thousand, deducting $2 a thousand for " stumpage," so that he received $31 a thousand for the blocks. Hill paid the defendant $2.50 a month for the use of the derrick.

The following extracts are from the testimony of one Rogers, the treasurer and general manager of the defendant, who testified as a witness for the plaintiff, and was the most important witness as to the nature of a " motion " at the Rockport granite quarries.

Rogers testified that he was treasurer and general manager of the defendant, and had been since October, 1881.

On cross-examination he testified that Canney was superintendent of the Canney division of the defendant's property, that this division included the purchase made from Canney by the defendant. The purchase from Canney was of approximately ninety acres, and after the sale Canney was superintendent of approximately ninety acres. In those ninety acres there were some twenty to twenty-five motions.

" *Q.* Describe what is a motion ? *A.* Well, a man wants to cut paving blocks and we set apart that territory for motions to be worked upon. He comes and applies for a chance to work a motion on the quarries, on that land, and we give him opportunity to locate the place anywhere he sees fit on that land, he

furnishing his own tools and doing all the work, and we pay him a stipulated price, a price agreed upon for the blocks that he makes of the different kinds. We make several kinds of blocks, and the price is agreed upon that we will pay for each kind of blocks of the various kinds. I think the specifications give the length and thickness and depth, and he works that motion as he pleases, entirely without any dictation from us how he should work it, in what manner, what particular spot he shall clear off, where he shall cut his stone, where he shall put his holes, how much powder he shall use. He gets out his stone on his own motion, in his own way. We have no jurisdiction as to how he shall do that work. — *Q.* Who furnishes the derricks? *A.* Well, many of them own their own derricks, buy their derricks, and sometimes they rent derricks. They may rent a derrick of us or of some other person. — *Q.* Who puts the derrick up? *A.* The man working the motion. — *Q.* Who decides how and where it shall be put up? *A.* The man who puts it up, the man who works the motion. — *Q.* Did the company rent a derrick to John Littleback? *A.* I understand they did; yes, sir. . . .

" The defendant received rent for the derrick at $2.50 per month, from October 26, 1894, down to the time of the accident. The company did not erect the derrick. Neither the company nor any of its officers had any right to say how or where it should be put up. We never have taken that matter into our hands at all. . . .

" There is a good deal of work done by the motion man before he gets the blocks into such shape that they can be delivered to the company. The defendant had no right to say to Littleback or Hill anything about how fast he should do his work. He worked as he pleased. The defendant had no right whatever to say how he should quarry his stone. That was for him to decide, how he should work the stone. Had no right to say to him how he should place his derrick. The defendant was not bound to pay for the paving blocks until they received them; took them away and accepted them. If a man got a lot of stock out, but no paving blocks cut, the defendant would have no right to put him off the motion without paying him something for the work he had done. We would give him

notice, we would not discharge him point blank after he had got a lot of stock ready. I don't understand that after the derrick was erected the company or any of its officers had any right to interfere with the derrick ; neither the company nor its officers had any control over it or its guys ; I don't so understand it. We pay a smaller price to a man quarrying on our land than if he were cutting on some one else's land, because it takes the stone off the land and uses it up. This is for stumpage. That is, we pay a sum less equal to the stumpage. I do not understand that the company has control over the premises let out for a motion."

On re-direct examination the witness testified : " If I owned a piece of quarry property and let some one occupy it for a motion, and all at once decided I would like to occupy it myself, I should go to the motion man and tell him I wanted to take the land into our own use, and if they had got some stones out ready to cut I would make an agreement with them as to what I should pay them for the work done. These motions are not let for any specified time. We do not claim the right to tell them to go or expect them to go whenever we want them to without paying them for the work they have done ; I would n't think that would be right. Whenever we have had occasion to do anything of that kind, a man that had any stone to work up, we have said to them we want to take possession here as soon as you have worked up the stone which you have ready. If I say to a man, ' We want our premises to use ourselves,' I expect him to go, unless I had an agreement with him to lease it for a year or a specified time. We do not give these motion men any lease of the premises used by them. I am not in the habit of stating how long they shall stay, because they reserve the right to go whenever they want to, and that was about the way that Hill and Littleback were occupying this property of Canney's. It is understood that when men cut blocks on our land we take the paving blocks. It is the custom all over Cape Ann, I think, that whoever owns the land has the prior right to the blocks. If a motion man takes our land and strips it, and a good quarry is discovered so that we would not care to have him use the stone for paving blocks, we would tell him to leave, and agree with him about the price for work he had done there. There

have been one or two instances where we paid the men and they have gone and taken another motion. Whenever we have wanted to take possession we have paid the men for the stock which they have worked up. When we bought the property from Mr. Canney, by dealing with them fairly I could compel them to leave, but I could n't go to the men there who were working motions and tell them to get off the land. I do not consider that I had anything to do with the derrick or guy while the man was operating it."

Evidence was introduced by the defendant tending to show that Lucas at an earlier hour on the day of the accident had driven over the same road and under the same guy with the same team without injury, and that in doing so some portion of his load had knocked the guy rope out of the prop which held it above the highway, and that it remained in this condition until he received his injury by driving under the same guy on his return in the evening. This testimony was contradicted by witnesses for the plaintiff.

At the close of the evidence the defendant requested the judge to direct a verdict for the defendant. The judge refused to do so; and the defendant excepted. The defendant requested the judge to instruct the jury as follows:

" 1. That it is not open to the plaintiff under its declaration to claim, argue, or recover on the ground of the existence of, maintenance of, or failure of defendant to abate a nuisance.

" 2. The judgment does not settle, is not conclusive, is not even evidence, of the existence of a nuisance.

" 3. The judgment in the other case is not a judgment that there was a nuisance, but only that on the 26th day of February, 1895, there was a defect in the way.

" 4. If the derrick was placed in position by servants of the operator of the motion, and the company had no right to interfere with its location or arrangement, then the company is not liable.

" 5. If Hill had complete control of the part of the quarry where the accident occurred, and the arrangement of the guy ropes, which he alone had the right to change, caused the accident, then the company is not liable.

" 6. If the defendant did not have control of the derrick, then it is not liable.

" 7. If Hill was an independent contractor, and not an employee of the company, then the company is not liable.

" 8. If Hill was a mere licensee, the company is not liable.

" 9. If Hill was a lessee of the company, the company is not liable.

" 10. If Littleback, who placed the derrick in position, sold out his motion to Hill, and there was no interval during which the company had control of the premises, then the company is not liable.

" 11. If Littleback erected the derrick, and Littleback was a contractor, and not an employee not subject to the orders of the defendant, and the defendant merely permitted the derrick to remain at the time of the change from Littleback to Hill, and then Hill took it as a contractor like Littleback, the defendant is not liable in this action.

" 12. If the motion and derrick were let before the defendant took possession of Canney's property, and the letting was continuous to the time of the accident, the defendant is not liable.

" 13. If the motion and derrick were let after defendant took possession of Canney's property, and the letting continued to the time of the accident, the defendant is not liable.

" 14. If the motion and derrick were let to Littleback, and Littleback put it up, and the motion and derrick were afterwards transferred by Littleback to Hill, and the defendant did not at any time have control of them, then the defendant is not liable.

" 15. It was the duty of the town to use reasonable care to have the guy removed.

" 16. If the prop or props were knocked down in the morning and the accident happened in the evening, the judgment is not conclusive, and if the knocking down of the prop caused the accident, and the accident would not have happened otherwise, then the defendant is not liable, as the defendant had no control after Hill took the motion and derrick.

" 17. If the prop was knocked down a little while before the accident, and accident would not have otherwise happened, and the defendant had no control at the time of knocking down till the time of the accident, the defendant is not liable.

" 18. If the guy was in position a long time, long enough to amount to a nuisance, and the town had as much notice or

knowledge thereof as the defendant, then the town and defendant are *in pari delicto,* and the plaintiff cannot recover.

"19. It is not one of those cases where a party is liable because he has given a contract to a contractor, which necessarily involves the creation of a nuisance or tort; but the defect, tort, or nuisance, if any, was caused by the *manner* of doing the work involved in the contract or letting, and over that manner of doing it the defendant had no control, and therefore the defendant is not liable.

"20. If the defect in the way arose from the manner of doing work or erecting the derrick, and defendant had no control over that manner, the defendant is not liable.

"21. If motion and the derrick were let out to Hill, and under his exclusive control, then the fact that the company had the right to enter and turn him out at any time would not render it liable, as it would be under no obligation to exercise that right in behalf of the public."

The judge in his charge, in dealing with the first three requests, said:

"During the argument of counsel for the plaintiff the word 'nuisance' was used by him with reference to this condition of things. I did not understand the counsel for the plaintiff to use that word in any technical or strict sense. I understood him rather to use the word in the general sense in which we speak of a thing being a nuisance or as an obstruction, or that which creates danger, which is a menace in any way. I understood him, in other words, to use that word in its general sense and in its, perhaps, colloquial sense, and not in its strictly legal sense."

The judge then gave the first three requests, saying:

"I give you these instructions, but I want you to understand what I mean. I understand the requests to refer to a nuisance in the law. It is not necessary to the maintenance of the plaintiff's case here, and it was not necessary to the maintenance of the case of Lucas against the town of Rockport, that there should have been at this place a nuisance in the strict sense of the law, and, as I say, I did not understand the counsel for the plaintiff to use the word in that sense. It is a matter of terms as I regard it."

The judge instructed the jury that the former verdict was

conclusive as to three things, the existence of the defect, that by reason of the defect Lucas was injured under circumstances giving him a right to recover, and that the damages were in the amount fixed by the verdict. He further instructed the jury that the defendant would be liable over to the plaintiff for the amount the plaintiff had been obliged to pay, either if the defendant itself maintained the guy, or had leased the premises with the derrick and guy upon them to Littleback or Hill, or granted a license to Littleback or Hill to occupy the premises with the derrick and guy upon them, under such circumstances that the use of the derrick or guy was contemplated or might reasonably have been understood to be contemplated; in other words, in the case last supposed if one of the objects of the leasing or license was that the derrick and guy should be used by the lessee or licensee, this imposed a responsibility for their use upon the party allowing it, although the use itself was by a lessee or licensee, " just as in the case of premises let with a nuisance upon them," and the landlord cannot escape responsibility because by the terms of the letting he has retained no control over the premises.

The judge instructed the jury that if Littleback or Hill were the lessees of the premises, assuming that it was not a leasing of property which had apparatus upon it which was contemplated by the defendant should be used in the manner in which it was used, but the relation existing between them and the defendant allowed the defendant no right to interfere with what should be done upon the premises, and the lessees having sole control themselves erected and maintained the derrick and guy, the defendant would not be liable. Littleback and Hill would then be independent parties, without obligation or responsibility on the part of the defendant for their conduct. The judge left it to the jury to determine from the evidence which state of facts existed, and what the contract and relation between the parties was.

The judge also gave the defendant's requests numbered 4, 5, and 14, and also left it for the jury to say whether the plaintiff was *in pari delicto* with the defendant in maintaining the guy.

The defendant excepted to the instructions upon the subject of nuisance and to the refusal of the judge to give the rulings requested except as stated above.

The jury returned a verdict for the plaintiff.   The defendant alleged exceptions.

*C. K. Cobb*, for the defendant.

*F. H. Tarr*, (*S. D. York* with him,) for the plaintiff.

LORING, J.   In this case there was a mistrial, but we think that the plaintiff is entitled to keep his verdict.

The jury were told that to charge the defendant they must be satisfied that the defendant kept control of all work done by its " motion " men, or that when Hill began to work as a " motion " man on the land in question, the use of a derrick, as it was then erected, was contemplated by the defendant and by Hill ; the jury were further told that if they did not find one of these two facts their verdict must be for the defendant.

The jury should have been told that the guy of the derrick was a nuisance, and that the defendant was liable if it allowed the derrick, with the guy as it was set up, to be maintained on its land, even though it had been set up by Littleback before the defendant became the owner of the land, at any rate, if the fact that it was stretched across the highway as it was, was known to the defendant.

A " motion " man is a licensee carrying on work on his own account on the land of the licensor, the quarry owner.   He is not a tenant; he has no right of possession in the land worked by him, but merely the privilege of quarrying rock on it and working up the rock into marketable shape, in the case at bar into paving blocks ; the payments made by him to the quarry owner are by way of " stumpage," in this case, $2 for every thousand of paving blocks, and not a payment by way of rent.

The quarry owner in such a case is no more liable for injuries caused by the " motion " man and his servants than he would be in case the work of quarrying the rock and working it up into paving blocks had been done by an independent contractor.   Indeed, his liability is not so extensive; for, in case of work done by a licensee, the work done is done on the licensee's own account, as his own business, and the profit of it is his ; it is not a case, therefore, where the thing which caused the accident is a thing contracted for by the owner of the land, and for which he may be liable for that reason, even when done by an independent contractor, because it is a thing

dangerous in itself, or because the doing of it involves a duty to others, or because it is itself a nuisance. *Wetherbee* v. *Partridge*, 175 Mass. 185. *Robbins* v. *Chicago*, 4 Wall. 657, 679. *Black* v. *Christchurch Finance Co.* [1894] A. C. 48. *Pickard* v. *Smith*, 10 C. B. (N. S.) 470. *Hardaker* v. *Idle District Council*, [1896] 1 Q. B. 335. *Angus* v. *Dalton*, 4 Q. B. D. 162, 184; 6 App. Cas. 740, 829. *White* v. *Jameson*, L. R. 18 Eq. 303. Even more the erection of a derrick is such an act, that if it had been done by an independent contractor and a traveller on the highway had been injured by the negligence of the contractor's servants in erecting it, the landowner would not have been liable; such an act is a mere transitory act done in the progress of the work, and is what has been described, for want of a better term, as " a casual act of wrong or negligence," and as " collateral negligence." *Pickard* v. *Smith*, 10 C. B. (N. S.) 470. *Angus* v. *Dalton*, 4 Q. B. D. 162, 184; 6 App. Cas. 740, 829. *Hardaker* v. *Idle District Council*, [1896] 1 Q. B. 335. *Robbins* v. *Chicago*, 4 Wall. 657, 679.

But the result of Littleback's erecting the derrick, with the guy stretched across the highway so low as to be dangerous to persons driving over the way, was the erection of a nuisance on the defendant's land. It was held in *Gray* v. *Boston Gas Light Co.* 114 Mass. 149, that an owner was liable, where the chimney of a building in his exclusive occupation had been made dangerous to those travelling on the highway by the act of a third person in attaching a telegraph wire to it and we have no doubt that an owner is bound to see to it that his land is so managed by persons brought on to it by him, as not to cause injury to others; and that if a structure is erected on his land by a licensee, which is, in fact, a nuisance, and he suffers it to remain there, he is liable to any one injured thereby, at any rate when he knows of the existence of the thing which constitutes the nuisance. That there might be such a duty on the owner of land was suggested by Littledale, J., in *Laugher* v. *Pointer*, 5 B. & C. 547, 560, a case which had to do with personal property, but in which the whole subject was discussed; and that suggestion has since been quoted with approval. See Parke, B., in *Quarman* v. *Burnett*, 6 M. & W. 499, and in *Rapson* v. *Cubitt*, 9 M. & W. 710, 714; Cresswell, J., in *Rich* v. *Basterfield*,

4 C. B. 783; Rolfe, B., in *Hobbit* v. *London & Northwestern Railway*, 4 Exch. 244, 256; Jessel, M. R., in *White* v. *Jameson*, L. R. 18 Eq. 303, 305. This principle was enforced in *White* v. *Jameson*, L. R. 18 Eq. 303; *Chibnall* v. *Paul*, 29 W. R. 536; *Attorney General* v. *Stone*, 12 Times L. R. 76. And see Thomas, J., in *Hilliard* v. *Richardson*, 3 Gray, 349, 366. Compare *Gray* v. *Boston Gas Light Co.* 114 Mass. 149, 153, and *Tarry* v. *Ashton*, 1 Q. B. D. 314, 319, as to the necessity of knowledge on the part of the landowner.

Though the defendant had no control over the manner in which the work was done on its land by " motion " men, yet if a nuisance was erected on it by a " motion" man it was not only its right, but its duty, to see that the nuisance was abated.

We assume that proper instructions were given to the jury on the preliminary question of the defendant's liability, in case the jury found that Lucas had, earlier in the day, knocked the guy rope out of the prop, which held it up above the highway, and that the instructions, which are under discussion here, were given only in case the jury found in favor of the plaintiff on that preliminary question of fact. The whole charge is not set forth in the bill of exceptions, and no question has been raised by the defendant on this point, on which the evidence was conflicting.

Under the instructions upon which the case was submitted to them, the jury. must have found either that work done by " motion " men is done under the control of the owner of the quarry, or that the defendant in this case knew of the existence of the derrick, erected as it was erected; for they were instructed that unless they found that the work of " motion " men was done under the control of the owner of the quarry, they must find, to charge the defendant in this case, that the defendant contemplated that Hill would use the derrick as it was used by him when he began to work as a " motion " man. That includes a finding that the defendant knew of the existence of the derrick. The defendant cannot complain that the jury were told that they might hold the defendant liable on the ground that the work done by " motion " men is done under the landowner's control; there was no evidence on which such a finding could be made. But the defendant cannot complain of that; no objection was taken by it to that part of the charge.

*Exceptions overruled.*