EDMUND PATNOUDE *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Bristol.  October 28, 1901. — November 26, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Negligence,* In causing fright of horse.

In an action against a steam railroad for injuries caused by the plaintiff's horse taking fright at an electric car covered with white canvas resting on a flat car which stood on the defendant's track near the highway, it appeared, that the consignee, a street railway company, had agreed with the defendant to unload the car at this point in order to move it across the street to a car barn of the street railway, and for that purpose with the defendant's permission had taken down the defendant's fence about eight feet high, which while it stood partially screened the car from the street, and that at the time of the accident the street railway company's men were at work preparing to unload the car. *Held,* that the causes of the fright were due to transient conditions under the control of the street railway company and that it alone was liable, if any one. *Semble,* that no one was liable.

HOLMES, C. J.   This is an action for injuries caused by the plaintiff's horse taking fright at an electric car covered with white canvas and resting on a flat car which stood on the defendant's track near the highway.   At the trial the presiding judge took the case from the jury on the ground that at the time of the accident the car was in charge of a street railway company to which it was to be delivered, and that its conduct was the proximate cause of the injury.   The plaintiff excepted.

The street railway company had agreed with the defendant to unload the car at this point in order to move it across the street to the street railway car barn.   To that end it had to take down the defendant's fence between the railroad tracks and the highway, and this was expected by the defendant.   The fence was about eight feet high and while it stood partially screened the car from the street.   At the time of the accident it had been taken down and the street railway company's men were at work preparing to unload the car.

If the horse's fright was due to the car's being covered with white canvas, although it seems to have been fastened tightly so as not to flap, that was a transitory condition of the car which could have been changed by the street railway company in five minutes after it took charge, if it had seen fit.   Under such circumstances, if any one is liable it is the person in control.   No doubt a landowner may be answerable for a nuisance on his land, notwithstanding the fact that it is put there by some one else or is under another's command.   *Rockport* v. *Rockport Granite Co.* 177 Mass. 246.   But not every transitory source of danger is within this principle.   177 Mass. 255.   A certain degree of permanence is part of the conception of a nuisance.   *Commonwealth* v. *Patterson,* 138 Mass. 498, 500.   *Commonwealth* v. *Hayes,* 150 Mass. 506, 508.   *Reedie* v. *London & North Western Railway,* 4 Exch. 244, 257.

But we need not stop here.   If the cause of the fright was the car, irrespective of its covering, and if we suppose that any one could be held liable for that, still the defendant cannot be held.   All the conditions were transitory.   All were in the control of the street railway company.   It would be absurd to say that the unloading of the car at the place contemplated by the defendant

could not have been managed so as to avoid frightening horses, or that it necessarily was unlawful. The street railway company alone determined what precautions should be taken. The danger was not of such imminence and magnitude that the defendant was bound at its peril to see that due care was used. The case is not within the principle of *Wetherbee* v. *Partridge*, 175 Mass. 185, where the contract was taken to contemplate blasting within a few feet of the plaintiff's house, any more than of *Rockport* v. *Rockport Granite Co.* 177 Mass. 246, where the defendant allowed a relatively permanent derrick to be maintained upon its land. It more nearly resembles *Boomer* v. *Wilbur*, 176 Mass. 482, where a contractor was mending a chimney and dropped brick and mortar into the street. Whether we should agree with the opinion expressed in *Holliday* v. *National Telephone Co.* [1899] 2 Q. B. 392, that an explosion of a safety lamp in the highway, scattering melted solder, was on the other side of the line it is unnecessary to decide.

In putting our decision upon the ground on which we have placed it, we do not wish to be taken to intimate that if the plaintiff brings another action against the street railway company he can succeed. Suppose it to be admitted that the car was an object likely to frighten horses, the question remains whether having it where it was and as it was upon the defendant's land was a legal wrong to the plaintiff. As in many cases, perhaps it might be said in all, two principles or social desiderata present themselves, each of which it would be desirable to carry out but for the other, but which at this point come into conflict. It is desirable that as far as possible people should be able to drive in the streets without their horses being frightened. It also is desirable that the owners of land should be free to make profitable and otherwise innocent use of it. More specifically, it is desirable that a railroad company should be free to use its tracks in any otherwise lawful way for the carriage, incidental keeping and final delivery of any lawful freight. A line has to be drawn to separate the domains of the irreconcilable desires. Such a line cannot be drawn in general terms. We assume for the purposes of the argument that some uses of land might be imagined which would be held unlawful solely because of their tendency to frighten horses. *Brown* v. *Eastern & Midlands*

*Railway*, 22 Q. B. D. 391. *House* v. *Metcalf*, 27 Conn. 631, 640. *Knight* v. *Goodyear's India Rubber Glove Manuf. Co.* 38 Conn. 438, 442. Others would be held lawful no matter how many horses they frightened. There is no doubt that an ordinary wooden building is lawful, even if painted white. Most of us are inclined to think, as at present advised, that a similar structure is equally privileged when it is on wheels, and that it is not less so when the whiteness is due to a wrapper which does not flap in the wind. Most of us regard the question as not too delicate to be within our competence to decide without the aid of a jury. See *Flint* v. *Norwich & Worcester Railroad*, 110 Mass. 222; *Lamb* v. *Old Colony Railroad*, 140 Mass. 79; *Gilbert* v. *Flint & Pere Marquette Railway*, 51 Mich. 488; *Simkin* v. *London & North Western Railway*, 21 Q. B. D. 453; 1 Beven, Negl. (2d ed.) 519.

In view of our decision the question of evidence becomes immaterial.

*Exceptions overruled.*

*L. LeB. Holmes*, for the plaintiff.
*F. S. Hall*, for the defendant.