## Chicago Telephone Company v. Avery R. Hayes, Administrator.

### Gen. No. 12,029.

1. TELEPHONE COMPANY—*not liable for fallen wire owned by city but strung on its poles.* Where the city required as a part of the consideration for the permission granted to a telephone company to erect poles, that it be given the right to use a portion thereof for its wires, the city cannot be held as the lessee of the telephone company and such company is not liable for an injury resulting from a fallen wire owned and controlled by such city.

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook County; the Hon. JOHN L. HEALY, Judge, presiding. Heard in this court at the October term, 1904. Reversed. Opinion filed July 3, 1905. Rehearing denied July 13, 1905.

**Statement by the Court.** This suit was brought against appellant and the city of Chicago for negligence which it is alleged caused the death of appellee's intestate. The declaration set up that the defendants were possessed of and using certain telephone poles and wires in a public alley in the city of Chicago; that there were near said telephone poles and wires other poles and wires highly charged with electricity; that defendants negligently suffered one. of said telephone

wires to hang loosely from one of said telephone poles down to and upon and against one of said electric wires and down to and upon the ground, and thereby said telephone wire became charged with electricity and dangerous to any person coming in contact with the same; and that Charles Anderson, while in the exercise of due care, being entirely ignorant of the fact that said telephone wire was charged with electricity, and having no notice thereof, and in the performance of his duties, took hold of said telephone wire and was killed.

The alley in question is next west of Ashland avenue, which runs north and south in the city of Chicago. From Van Buren street, an east and west highway, the alley leads south. Half way down the block and on the west side of the alley is a barn, against which and in the alley stood a garbage box. At the southeast corner of the barn there was an electric pole owned and used by the Commonwealth Electric Company. In coming south in the alley from Van Buren street, and before reaching the barn, two telephone poles belonging to and used by the appellant are passed. Still further south than the pole of the Commonwealth Electric Company stood a fourth pole, which belonged to and was used by appellant. These four poles stood substantially in a north and south line in the alley and next its west line. The wires on the telephone poles were higher than and run over those on the electric poles. The electric wires carried 9,000 voltage. The other wires in this alley carried less than 500 voltage. It takes about 550 voltage to kill a man. An iron wire strung from the telephone pole south of the barn to the telephone pole next north of the Commonwealth Electric pole had broken at a point near the north pole, and had fallen down over the electric wires, and from them to the ground. About a week before the accident the lower end of this fallen wire had been picked up and had been wrapped around a post that formed a part of the garbage box. Twice a week the deceased, Charles Anderson, who was a garbage collector, in the employ of the city, came into this alley and cleaned out the garbage box. October 2, 1900, the deceased while in the line of his employment came to this garbage

box, thrust his shovel into the box, and then touched or caught hold of this fallen wire and was instantly killed by the electricity with which it was charged. This fallen wire had become a live wire by reason of its resting upon one of the electric wires of the Commonwealth Electric Company at a point where the insulation of the electric wire was either originally imperfect or had been worn away.

It appeared that in January, 1899, the Common Council of the city of Chicago passed an ordinance authorizing appellant to construct, maintain and operate a line of telephone wires in the city. It is therein "Provided that the city of Chicago shall have the right to the top cross-arm of each of said poles free from charge for the use of the city telegraph and telephone wires."

It also appears that July 29, 1891, the Common Council granted permission to appellant to erect poles with the necessary wires and fixtures in this alley. This permit contained the following: "Said Company hereby agrees in its acceptance of this permit to save the City of Chicago harmless from any damage whatsoever arising in consequence of the erection and maintenance of said poles or the issuance of this permit."

The evidence on behalf of appellee and of appellant tended to prove that this fallen wire hung from the top cross-arm of said south telephone pole, the use of which cross-arm was given to the City, and that such wire was owned by the City. It was conceded that this wire had not been in use for several years. The defendant, the city of Chicago, denied that it owned the wire in question, and introduced evidence tending to prove that it had no wires in said alley at the time of the accident.

The jury returned a verdict finding the city of Chicago not guilty, and finding appellant guilty, and assessed the damages of appellee at $3,500. Judgment was entered upon the verdict, and appellant perfected this appeal.

The principal grounds urged by appellant for a reversal are: the failure of appellee to prove the essential allegations of his declaration, viz.: the ownership, use or operation of

the broken wire by appellant and due care on the part of appellee's decedent; the failure of the court to instruct the jury, in effect, that appellant was not liable unless the wire was its property, and its giving the instruction, in its form of verdict, that a recovery might be had against one but not both of the defendants; and errors in the admission and exclusion of evidence.

Holt, Wheeler & Sidley, for appellant.

Edmund S. Cummings, for appellee.

Mr. Presiding Judge Ball delivered the opinion of the court.

The contention of appellant is, if it does not appear from the evidence that the fallen wire was owned or operated by it, the judgment of the court below must be reversed; while that of appellee is, that under the law appellant is liable for the death of Anderson whether the fallen wire was owned by the city or by the telephone company.

The preponderance of the evidence is that this fallen wire was owned by the city of Chicago. It was strung upon the top cross-arms of the telephone poles.

The franchises, rights and privileges of appellant were derived from the State and not from the city. The ordinance of January, 1899, was nothing more than permission to appellant to construct and to operate a line or lines of wires for telephone purposes in the streets and other public places of Chicago. For this permission the city demanded as a consideration the use of "the top cross-arm of each of said poles free from charge for the use of the city telegraph and telephone wires." Under this permit, and that of July 29, 1891, appellant erected these poles in this alley and the city placed on the top cross-arms of said poles the wire in question and used the same for its own purposes.

We do not think that either Balsley v. Ry. Co., 119 Ill., 68, or C. & G. T. Ry. Co. v. Hart, 209 Ill., 414, cited by appellee, is in point. Between these cases and the one under consideration there is a radical difference. In each of those

cases it was held that where a company chartered to operate a railway leases the use of its right of way to another railway company, public policy requires that the lessor company shall be liable for all damages occasioned by the lessee company to others in operating its trains over the lines of the lessor company.  This exceptional rule, by which a corporation may be held liable for defects in property it neither operates nor controls, is based upon the duty which is imposed upon it of seeing that no wrong is done through its chartered powers by persons to whom it has permitted their exercise.  In consenting that the city might use the top cross-arm of each telephone pole, appellant did not confer any of its chartered powers or privileges upon the city.  By the language of the permit the rights and privileges of appellant were limited to the cross-arms below the upper one.  In no legal sense can the city, in the use of these top cross-arms, be considered the lessee of appellant.  Still less was the city the agent or servant of or a contractor for appellant.  It placed its wires on these cross-arms as it might have affixed them to the side of a building or to a tree standing on private grounds.

Counsel for appellee cite three cases in further support of his contention.  In Gray v. Boston Gas Light Co., 114 Mass., 149, the defendant, without the permission of the plaintiff, attached to the plaintiff's chimney a telegraph wire. Afterwards the chimney was blown down and falling into the street injured the horse and wagon of third persons, who brought an action against the plaintiff as the owner of the building.  The plaintiff notified the defendant of the pendency of the suit and asked it to come in and defend, which it refused to do.  Thereafter the plaintiff settled that suit, and then brought this action to recover the moneys thus paid out.  The jury found that the telegraph wire pulled down the chimney.  The defendant contended that Gray was not liable for acts of negligence or wrongdoing committed on his land or building by a stranger.  But the court held to the contrary.  Had the chimney fallen while the defendant was putting up the wire, Gray would not have been liable; but

the chimney stood for a considerable time after the wire was fastened to it. The court says: "The owner of a building, under his control and in his occupation, is bound, as between himself and the public, to keep it in such proper and safe condition that travellers on the highway shall not suffer injury. (Citing cases.) It is the duty of the owner to guard against the danger to which the public is thus exposed, and he is liable for the consequences of having neglected to do so, whether the unsafe condition was caused by himself or another."

In Rockport v. Rockport Granite Co., 177 Mass., 246, it was held that if a derrick is maintained by a licensee on the land of his licensor with a guy stretched across a highway so low as to be dangerous to persons driving over the way, and the owner of the land knows of its existence and suffers it to remain there, this constitutes a nuisance, and such land owner is liable to any one injured thereby although the derrick was erected before he became the owner of the land. The Gray case, *supra,* is cited and approved.

In Ainsworth v. Lakin, 180 Mass., 397, it is decided that the owner of the wall of a building left standing after the building has been destroyed by fire, which would have to be taken down in order to rebuild, is liable for an injury caused by its fall after the expiration of a reasonable time for investigation and removal.

In each of these cases the owner of the defective property was held liable. To render the Gray case in point in the suit at bar, the injury must have been caused by some defect in the cross-arm or in the telephone pole. To make the Rockport case an authority here, it would be necessary for the fallen wire to have been owned by appellant, and then leased by it to the city. We are not able to see that the Ainsworth case has any application to the facts under consideration.

It is to be remembered that the death of Anderson was not caused by a defect in any cross-arm or in any telephone pole belonging to appellant, that the fallen wire was not owned or used or controlled by appellant, and that the current which gave the fallen wire its lethal character was not

carried on the poles nor was it the property of appellant, but was owned and cared for by another corporation.

In Quill v. The Empire, etc. Co., 159 N. Y., 1, the plaintiff while standing near a telephone pole belonging to the defendant was struck and injured by a glass insulator thrown from its pin in an attempt to change one of the wires. The person who did this was not in the employ of the defendant. After discussing the facts the court says: "The situation, then, so far as this defendant is concerned, is this: It turned over to another company the use of a part of its property, consisting of an arm of a telephone pole and the pins thereon, all of which were and still are in perfect condition; the Western Union Telegraph Company took possession of the pole, strung seven or eight wires thereon, and thereafter continued in the exclusive occupation of it down to the 27th of June, 1891, when an employee of the city government, having no relation whatever to any of the corporations owning or using the pole, went upon it for the purpose of making some temporary alteration in the position of the wires, and in attempting to do so lifted directly upwards a wire that rested against one of the pins, and which caught under the glass insulator, raised it up from the pin and threw it to the ground. The defendant is certainly not responsible, under this evidence, on the ground that it turned over to the Western Union Company the insulator thrown off, for it did not furnish it. Nor is it responsible for every act done or omitted on the lower arm of the pole, simply because it owns it. The neglect, if any there was, on the part of either the owner or occupant of the pole, was that of the Western Union Company in omitting to catch the insulator on the thread of the pin, and for its omission of duty the owner is not responsible."

In Holmes v. Union T. & T. Co., 41 N. Y. S. R. 767 (affirmed on the opinion below in 139 N. Y., 651), the defendant owned and operated a line of poles strung with its wires in Glen Falls. A messenger service company also strung its wires upon the same poles, but without the affirmative consent of the defendant. The wires being weighted down

with snow, one of them broke and fell into the highway. The foot of the plaintiff was caught in this wire and he fell to the ground and was injured. The trial court charged that if this wire belonged to the defendant it was liable; but if it was the property of the messenger company, the defendant was not liable. The jury found for the defendant, and the plaintiff appealed. In affirming the judgment of the court below the Supreme Court say: "But it is insisted by the appellant that the fact that the defendant permitted the Messenger Company to attach its wires to the defendant's poles made the defendant liable in any event for the injury resulting from the negligence of the Messenger Company in negligently permitting its wires to become detached from the poles by reason of which the defendant was injured. Thus is presented the question whether a party who owns and possesses a structure lawful and safe in itself and who permits another, under an implied license, to use for a lawful purpose, some portion of the same, is liable for the negligence of the one using to third persons who are injured thereby. * * * The defendant owed a duty to the plaintiff and the public in relation to its own wire and wires in its possession and under its control. But it owed no duty to the plaintiff in relation to the wire of the Messenger Co., unless the Messenger Co. was the servant, employee or agent of the defendant. No such relation existed between the defendant and the Messenger Co."

The rule laid down in the Quill and Holmes cases we regard as the true one and as decisive of the case at bar, viz.: that under ordinary circumstances the ownership and use of property, which by reason of its defective conditions has caused an injury, furnishes the test of liability for such injury. Appellant, not having the ownership or control of the fallen wire, under the facts of this case, owed no duty to the deceased, who was to it a stranger. The top cross-arm of each telephone pole, as to its occupation and use, belonged to the city of Chicago. It was for that municipality to take care that its wires strung upon such top cross-arms, whether in or out of service, did not endanger others.

It follows that the trial court erred in refusing to charge the jury, as duly requested by appellant, to find appellant not guilty. And having sent the case to the jury, it was reversible error for him to mark as "refused" the instructions tendered by appellant which defined the true relation of the fallen wire to the two defendants in the case.

The contention of appellee that appellant is liable in this action because it agreed to save the city harmless from any damage arising out of the erection and maintenance of the telephone poles, is not well founded. That indemnity is for the benefit of the city only, and third parties cannot take advantage of it.

What has been said renders the consideration of the other points made by appellant unnecessary.

The judgment of the Superior Court is reversed.

*Reversed.*