## MAMIE WEBEL
### vs.
## YALE UNIVERSITY, ET AL.

Superior Court      New Haven County      File No. 54586

MEMORANDUM FILED MARCH 15, 1939.     125 Conn. 515.

*FitzGerald, Foote & FitzGerald*, of New Haven, for the Plaintiff.

*Pelgrift & Blumenfeld*, of Hartford; *Woodruff & Klein*, of New Haven; *Weissman & Maretz*, of New Haven, for the Defendants.

SIMPSON, J. This is an action against a landlord and tenants of leased premises. It appears from the complaint that Yale University was the landlord or lessor, and the other de-

fendants, the lessees, operated a "Beauty Shop" on the leased premises. It also appears that plaintiff was a patron of the "Beauty Shop" and claims and alleges that on January 14, 1938, she was injured by reason of defective and improper condition of the premises while she was upon said premises as a patron and invitee of the "Beauty Shop."

From the complaint it appears that the floor of the shop proper was seven inches lower than the adjoining floor of the rest room, and that the door opened into the shop proper, which condition is alleged to be dangerous and a nuisance to anyone using that rest room. Both the shop proper and the rest room appear to be wholly within the leased premises. It is also alleged the condition existed when the tenants entered into possession. The plaintiff further alleges and claims that because of the defective condition and when she was leaving the rest room to go into the shop proper, she was thrown to the floor of the shop proper and was injured.

The named defendant demurs to the complaint on the ground that the leased premises were in the exclusive possession and control of the other defendants, and that the plaintiff was on the premises at the invitation of the other defendants.

There is no case in this state directly in point. In *House vs. Metcalf*, 27 Conn. 631, it was a person driving along a highway who was injured by his horse becoming frightened at an overshot wheel which was situated so near a highway as to be a nuisance to persons driving by; in *Calway vs. Schaal & Son, Inc.*, 113 Conn. 586, it was a defective condition of a cornice of a building, causing snow and water to be precipitated upon a public sidewalk, which then froze and caused the plaintiff, a passerby, to fall and be injured; in *Swift & Co. vs. Peoples Coal and Oil Co.*, 121 Conn. 579, it was a nuisance created by oil seeping through leased premises to plaintiff's premises. None of these involved an invitee of the tenant of the leased premises.

The general weight of authority is that an invitee, such as guest, patron, servant or employee, stands in no better position than the lessee himself. "Except as stated in §§357 to 362, a lessor of land is not liable for bodily harm caused to his lessee or others upon the land with the consent of the lessee or a sublessee *by any dangerous condition* whether natural or artificial which existed when the lessee took possession." *Restatement, Torts*, §356. (*Italics* are the court's.)

The exceptions referred to in the foregoing paragraph are where the lessor has agreed to repair or where the lessor conceals or fails to disclose conditions which are dangerous, or where land is leased for purposes involving admission of numerous persons, such as amusement places, theaters, public piers, or where parts of premises are retained in lessor's control and which lessor is entitled to use, or parts of land so retained but necessary to the safe use of the part leased, or where there is negligent repair by the lessor.

The instant case falls within none of these exceptions.

The weight of authority supports the proposition stated in the restatement, and that it applies to a customer or patron of the tenant, the wife or servant of the tenant and guests, even though the condition constitutes a nuisance and was existing at the time the tenant took possession. *Harris vs. Lewistown Trust Co.*, 326 Pa. 145, 191 Atl. 34, 110 A.L.R. 749, 755, and note, page 756.

The plaintiff relies upon certain excerpts in the cases of *House vs. Metcalf, supra; Calway vs. Schaal & Son, Inc.,. supra;* and *Swift & Company vs. Peoples Coal and Oil Co., supra,* but as stated above none of those cases involved an invitee upon the leased premises, and it is not to be presumed that the Supreme Court meant to state the law applicable to all sorts of cases but only that applicable to the case before the court.

The plaintiff particularly relies upon the case of *Bailey vs. Kelly,* 86 Kan. 911, and lays stress upon the fact that our Supreme Court cited that case in the *Swift & Company* case, *supra.* The Supreme Court did not cite the *Bailey* case in the *Swift & Company* case, among others, upon the proposition that (p. 592): "Ordinarily a landlord is not liable for a nuisance created upon premises he has leased where that nuisance did not exist when they were leased or was not a result reasonably to be anticipated from their use for the purpose and in the manner intended."

How far the court meant to adopt or approve the *Bailey* case there is, of course, no way of determining.

But be that as it may, the *Bailey vs. Kelly* case comes as near as any case cited applicable to the instant case. The court in that case held the landlord liable to a servant of the tenant who conducted a restaurant on the premises, and the servant was drowned by falling into a cistern which was held to have

been in a defective and unsafe condition at the time the tenant went into possession and a nuisance. That case went back for retrial, and following a retrial it was appealed again to the Supreme Court of Kansas (*Bailey vs. Kelly*, 93 Kan. 723). In the second case the Supreme Court squarely overruled the first case, saying at page 725: "At the second trial the court, after it had overruled a demurrer to the plaintiff's evidence, instructed the jury in accordance with this decision and a verdict was returned for the plaintiff. The defendant appeals and renews his contention that the law does not authorize the recovery of damages from him.

"A majority of the members of the court are convinced that the former decision was wrong. That the former decision was substantially unsupported by authority and was rendered against the settled law of this country is clear. (Notes, 34 L.R.A. 824; 34 L.R.A. n.s. 798; 39 L.R.A. n.s. 378; 48 L.R.A. n.s. 917; 50 L.R.A. n.s. 286; *see, also,* 49 L.R.A. n.s. 1120.) The notes cited refer to others and present a comprehensive view of the case law on the subject."

The court also said, at page 726: "The difficulty with this decision is that it is not closely discriminative with respect to facts, ignores ideas of legal duty which experience has demonstrated to be well founded and fair, and involves the law in confusion concerning some of its fundamental principles."

And in speaking of the duty of the landlord to the tenant and his invitees and the public, it states, at pages 730 and 731: "The tenant may or may not invite third persons, servants, patrons, guests, and others, upon the premises, as he pleases, but the landlord extends and can extend no such invitation, either expressly or by implication. He cannot himself enter upon the tenant's possession, even to repair, unless the right be reserved or permission obtained, much less grant licenses to others. The result is, the negligence theory of liability, suggested in the syllabus of the former opinion, breaks down for lack of any legal duty on the landlord's part to sustain it.

"The principle upon which the lessor of premises is held liable to third persons for nuisances existing at the time the tenancy was created is this: The landlord having possession and control of his land, or the right to possess and control it, owes the public, who are suffering or must suffer from the nuisance, the duty to abate it and must respond in damages for a breach of the duty. The duty and the liability are not satis-

fied by the simple act of leasing the premises, and continue until the nuisance is abated. . . .

"When the condition of property is such that it does not impair the public safety the landlord owes no duty to the public or to any member of the public to change the condition. When he comes to deal with a specific individual as a prospective tenant, he owes that individual no duty except not to entrap him by concealing facts which ordinary inspection would not reveal, and he owes no other individual any duty at all. The landlord may in perfect good conscience offer his property, such as it is, to a tenant who takes it, such as it is, on satisfactory terms, just as the landlord and tenant did in this case. This is true although buildings may be in tumble-down condition, excavations may be unguarded, or the premises may be otherwise uninhabitable or in unsafe condition for use. The only exception is that of property devoted to public use, such as wharves, railroads, elevators, public halls, and the like. Negotiations having been fairly concluded and possession having been given to the tenant, no obligation on the part of the landlord to safeguard or to repair remains unfulfilled. After that, no obligation to repair arises during the tenancy unless the landlord has contracted to do so. This is true even although the tenant create a nuisance on the premises, dangerous to the public."

And finally the court says, at page 732: "Instead of being genuinely progressive, the former decision was merely arbitrary and it is overruled."

It is interesting to note that the decision in the first case was unanimous and that while the second case was decided by a four to three opinion, the justice who wrote the opinion in the first case concurred in the prevailing opinion in the second case.

The court has been cited no well considered case holding contrary to the second *Bailey* case, and while the latter case is not binding upon this court, it appears to be sound and is persuasive.

In the instant case it does not appear that the named defendant had any authority to go upon the premises after the letting and abate dangerous or improper conditions, and make them safe for the tenant's patrons, and according to the great weight of authority owed the patrons no duty to do so.

The demurrer of the named defendant is therefore sustained.