Bailey v. Kelly.

---

MILTON E. BAILEY et al., Appellants, v. JOHN KELLY, Appellee.

No. 17,565.

SYLLABUS BY THE COURT.

1. LANDLORD AND TENANT—*Dangerous Nuisance—Liability of Landlord.* Where a nuisance dangerous to life is created by the owner on his premises, or through his gross negligence is suffered to remain there, he can not by leasing the property to another avoid his own liability to any person who is rightfully upon the premises and who, without fault, is injured by reason of such nuisance; and this liability extends to a servant of the tenant, notwithstanding the tenant, by reason of his own fault or neglect or knowledge of the danger, could not have maintained an action against the owner for any injury suffered by himself.

2. ——— *Leased Premises—Dangerous Nuisance—Notice to Landlord.* In such a case it is for the jury to determine whether or not the owner knew of the dangerous condition of the premises at the time of the letting, or in time to have abated the nuisance before the injury occurred, or should have known it by the exercise of ordinary care.

Appeal from Cloud district court.	Opinion filed
April 6, 1912.	Reversed.

*Charles L. Hunt, Park B. Pulsifer, A. M. French,*
and *A. L. Wilmoth,* for the appellants.

*F. W. Sturges, Fred W. Sturges, jr.,* and *Theo Laing,*
for the appellee.

The opinion of the court was delivered by

PORTER, J.: On October 4, 1909, the daughter of the
plaintiffs, a girl of sixteen years, was drowned in a
cistern on premises belonging to the defendant. At
the time of the accident she was a servant in the em-
ploy of persons who occupied the premises as tenants
of the defendant. The parents sued the owner of the
property to recover damages upon the ground that he
was negligent in permitting the cistern to be and to
remain with a dangerous and insecure covering. The
court sustained a demurrer to the evidence and the
plaintiffs appeal.

In the rear of the premises there was a large shed
in which there was a cistern twenty feet deep and eight
feet in diameter. The water in the cistern was twelve
feet deep. The wooden platform over the cistern was
raised a few inches above the level of the ground, there
being no floor in the shed. Sometime prior to the fall
of 1907 an opening had been cut in the platform. The
cover to the opening consisted of a window sash, which
was about two feet wide and two feet eight inches
long, from which the glass had been removed and upon
one side of which sheet iron was nailed. The cover
was but little larger than the opening and there was
no way of fastening it to the platform; it lay loosely
over the opening and was easily slipped off or to one
side. Water was drawn from the cistern by lowering
a bucket through the opening. In December, 1907, the
defendant leased the premises to Watson for the pur-
pose of being used as a restaurant. The cover of the

Bailey v. Kelly.

cistern remained in the same condition from the time of the letting until the accident, after which hinges and clasps were put on, by which it could be fastened in place. The shed in the rear of the restaurant was used by the tenants for the purpose of storing supplies and for doing laundry work, water from the cistern being used for laundry purposes. The plaintiffs' daughter, who had been in the employ of the tenant about four weeks, went from the kitchen to the shed to get supplies for the restaurant. In doing so she stepped upon the insecure cover, which tilted and threw her into the cistern and she was drowned.

The trial court sustained the demurrer on the sole ground that the action could not be maintained because the daughter, if she had survived, could not have recovered from the landlord for injuries received while a servant of the tenant caused by the defective condition of the premises or the failure of the landlord to repair.

From the evidence it appears that the defendant purchased the property in January, 1906. The cistern was made by a former owner in 1895. In 1907 a tenant, who occupied a part of the premises and who had been using the cistern in connection with a barber shop, pulled up the pump and abandoned the use of the cistern. He left the platform as it had been up to that time, with a small opening just large enough for a four-inch pipe. The evidence does not show who caused the larger opening to be made, or who provided the defective cover, but the platform, the opening and the cover were in the same condition when the premises were leased to Watson in December, 1907, as they were when the accident occurred. In order to show that the defendant knew of the condition of the cistern, the tenant, Watson, was called as a witness. He testified that at the time he went into possession the defendant did some painting about the house and was there when

58—86 KAN.

the witness was using the cistern to get water to wash the floors and windows.   He also testified that he examined the premises himself at the time he leased the place, and that from about the time he took possession he knew the condition of the cistern, and that there was nothing about it that led him to believe it to be dangerous; that on the day of the accident he was helping his wife with the laundry work and had been drawing water from the cistern for washing, and that, so far as he knew, Jennie Bailey, the girl who was drowned, never drew any water from the cistern. There was no evidence to show that she knew of the dangerous condition of the cover except that she had been employed there for four weeks before the accident, and that she and the other employees went in and out and had opportunity to see the premises.

As between landlord and tenant, where there is no fraud or false representations or deceit, and in the absence of an express warranty or covenant to repair, the law has always been that there is no implied contract that the premises are suitable or fit for occupation, or for the particular use intended, or that they are safe for use.   (*Moore v. Parker*, 63 Kan. 52, 64 Pac. 975, 53 L. R. A. 778; *Bowe v. Hunking*, 135 Mass. 380; *O'Brien v. Capwell*, [N. Y. Supr. Ct.] 59 Barb. 497; *Jaffe v. Harteau*, 56 N. Y. 398; *Eakin v. Brown*, [N. Y. C. P.] 1 E. D. Smith 36; 1 Taylor, Landlord and Tenant, 9th ed., § 175a.)   The rule generally is that the occupant and not the owner is responsible to third persons for injuries caused by the failure to keep in repair.   (1 Thompson, Com. on the Law of Neg. § 1155; 1 Pingrey on Real Property, pp. 617, 618, 623.)

There are certain exceptions to the rules exempting the landlord from liability for injuries to third persons caused by defective conditions in leased premises.   One of them, relied upon by the appellant, is where the premises are let with a nuisance upon them which is the cause of the injury complained of.   A nuisance may

Bailey v. Kelly.

result from nonfeasance or negligence as well as from misfeasance or malfeasance. (Wood on Nuisances, 3d ed., ch. 1.) If there is a dangerous nuisance on the premises the owner can not avoid liability to a third person for damages resulting from a continuance of the nuisance which it was his duty to abate. (1 Thompson, Com. on the Law of Neg. § 1158; *Knauss v. Brua,* 107 Pa. St. 85; *Irvine v. Wood et al.,* 51 N. Y. 224; *Waggoner v. Jermaine,* [N. Y. Supr. Ct.] 3 Denio, 306; *Fish v. Dodge,* [N. Y. Supr. Ct.] 4 Denio, 311; *Rosewell v. Prior,* [Eng.] 2 Salk. 459; *Clark v. Fry,* 8 Ohio St. 358; *Stephani et al. v. Brown,* 40 Ill. 428; *City of Peoria et al. v. Simpson,* 110 Ill. 294.) The rule is well settled, however, that when the property does not constitute a nuisance when demised, but becomes so only by the act of the tenant, the owner will not be held liable. (*Joyce v. Martin,* 15 R. I. 558, 10 Atl. 620; *Rankin v. Ingwersen,* 49 N. J. Law, 481, 10 Atl. 545; *Kalis v. Shattuck,* 69 Cal. 593, 11 Pac. 346; Shearman & Redfield on the Law of Neg., 5th ed., § 120.)

The doctrine of *caveat emptor* does not apply where there is any dangerous defect in the demised premises not easily discoverable, and if the landlord knows of such defects the duty rests upon him to notify the lessee. (*Moore v. Parker,* 63 Kan. 52, 64 Pac. 975, 53 L. R. A. 778; *Meyers v. Russell,* 124 Mo. App. 317, 101 S. W. 606; *Sunasack v. Morey,* 196 Ill. 569, 63 N. E. 1039; *Morgan v. Sheppard,* 156 Ala. 403, 47 South. 147; *Cate v. Blodgett,* 70 N. H. 316, 48 Atl. 281.) A distinction, of course, is made between cases where the construction of the premises is such that they can not be used at all for the purpose intended by the tenant without creating a nuisance, and those where the nuisance arises from an improper use of the premises by the tenant. (1 Thompson, Com. on the Law of Neg. § 1158; *Pickard v. Collins,* [N. Y. Supr. Ct.] 23 Barb. 444.) In most of the cases holding the landlord liable because of leasing the premises with an ex-

isting nuisance which has caused the injury, it will be found that the defective or dangerous condition created what is usually termed a public nuisance, such as an unguarded excavation on a public street or so near thereto as to become dangerous to the public. Such are the following cases: *Stephani et al. v. Brown*, 40 Ill. 428; *Hart v. Mayor, &c. of Albany*, (N. Y. Supr. Ct.) 9 Wend. 570; *City of Peoria et al. v. Simpson*, 110 Ill. 294; *Owings v. Jones*, 9 Md. 108; *Dalay v. Savage*, 145 Mass. 38, 12 N. E. 841.

Others proceed upon the proposition that the premises were leased with the expectation that they would be used and frequented by the public, such as a wharf or pier or place of amusement. (*Albert v. State, use of Ryan*, 66 Md. 325, 7 Atl. 697 — wharf.) In *Swords v. Edgar et al.*, 59 N. Y. 28, 17 Am. Rep. 295, a leading case very frequently cited, the action was against the landlord who leased a pier when it was defective, and it was held that he was liable to a third person who entered upon it and was injured by its defective condition. *Clancy v. Byrne*, 56 N. Y. 129, was a case where plaintiff's horse fell through a defective pier. The action was against the lessee, who had covenanted with his landlord to make all ordinary repairs, and had then sublet the pier. He was held liable because he owned or had rights in the premises and leased them with the nuisance upon them. No reason is apparent why the same rule should not apply to a case where the dangerous nuisance exists upon private property and a third person who is lawfully upon the premises and who is without default or negligence is injured thereby. In *Edwards v. N. Y. & H. R. R. Co.*, 98 N. Y. 245, which is often referred to in opinions by other courts and by text-writers as a leading case, this language is used (the italics are ours) :

"If a landlord lets premises and agrees to keep them in repair, and he fails to do so, in consequence of which

any one lawfully upon the premises suffers injury, he is responsible for his own negligence to the party injured. If he demises premises knowing that they are dangerous and unfit for the use for which they are hired, and fails to disclose their condition, he is guilty of negligence which will in many cases impose responsibility upon him. If he creates a nuisance upon his premises, and then demises them, he remains liable for the consequences of the nuisance as the creator thereof, and his tenant is also liable for the continuance of the same nuisance. But where the landlord has created no nuisance, and is guilty of no willful wrong or fraud or culpable negligence, no case can be found imposing any liability upon him for any injury suffered by any person occupying or going upon the premises during the term of the demise; and *there is no distinction stated in any authority between cases of a demise of dwelling-houses and of buildings to be used for public purposes.* The responsibility of the landlord is the same in all cases. If guilty of negligence or other *delictum* which leads directly to the accident and wrong complained of, he is liable; if not so guilty, no liability attaches to him." (p. 248.)

"The foundation of liability in these cases, when there is no warranty and no misrepresentation, is negligence." (*Bowe v. Hunking,* 135 Mass. 380, 384, citing *George v. Scivington,* [Eng.] L. R. 5 Ex. 1.)

Where the nuisance arises from the improper use of the premises the tenant and not the landlord will be liable; but where the nuisance existed at the time the premises were leased the action may be maintained against either lessor or lessee or both. (*Stephani et al. v. Brown,* 40 Ill. 428.) By receiving the rent the landlord profits by the continuance of the nuisance and is held liable after he has parted with the possession. Besides, he may, notwithstanding the lease, enter for the purpose of abating a nuisance. (*Rosewell v. Prior,* [Eng.] 2 Salk. 459.) It appears to be sound doctrine and good sense that he whose duty it is to abate a nuisance should answer for the consequences resulting from its continuance. In *Brown v. The Cayuga & Sus-*

*quehanna Railroad Co.*, 12 N. Y. 486, Denio, J., in a separate opinion, speaking for himself, said:

"Everyone is bound so to use his own property that it shall not be the means of injury to his neighbors, and I think the proprietor should himself look to it and that he can not safely wait to be admonished before reforming what may be dangerous to others." (p. 494.)

The main contention of the appellee is that the demurrer was rightly sustained because of the principle thus stated in 24 Cyc. 1119:

"The general rule is that a sub-tenant, guest or servant of the tenant is regarded as so far identified with the tenant that his right to recover against the landlord is the same as the tenant's right would be, had the accident happened to him; but he can have no greater claim against the landlord than the tenant himself would have under like circumstances." (To the same effect is 1 Thompson, Com. on the Law of Neg., § 1133.)

It must be conceded that authority from able text-writers and decisions by courts of the highest standing will be found which seem to support the contention. These authorities put the servant in the shoes of the tenant for all purposes. They divide strangers and all third persons into two classes with respect to the landlord's liability for injuries caused by defects in the premises. In the first class they place all persons who are strangers to both landlord and tenant, such as the owners of adjoining premises, travelers upon highways adjoining the leased premises, and all persons who sustain no contractual relations with either party to the lease. In the second class they place servants, employees, licensees, guests, customers, etc., of the tenant; and these being upon the premises by his invitation, express or implied, are said to stand in his shoes. The rule declared is that as between the landlord and them the duty to keep the premises in safe condition is in all respects the same as that which the landlord owes to the tenant. The doctrine of *caveat emptor* is strictly applied, and if

the tenant can not recover, this class of strangers can not. (*Whitmore v. Pulp Co.*, 91 Maine, 297, 39 Atl. 1032, 64 Am. St. Rep. 229; *O'Brien v. Capwell*, [N. Y. Supr. Ct.] 59 Barb. 497; *Perez v. Rabaud*, 76 Tex. 191, 13 S. W. 177, 7 L. R. A. 620; *Anderson v. Hayes*, 101 Wis. 538, 77 N. W. 891, 70 Am. St. Rep. 930; *Burdick v. Cheadle et al.*, 26 Ohio St. 393, 20 Am. Rep. 767; and see extended note in 92 Am. St. Rep. 499, and cases cited at p. 509.) A leading case is *O'Brien v. Capwell*, supra, which was an action by a washerwoman in the employ of the tenant against the landlord, for injuries caused by the railing on a back porch giving way on account of its defective condition and lack of repair. Some reliance was placed upon the promise of the landlord to repair, made when his attention was called to the defect. The court held the negligence of the landlord to be one of omission of duty; and in the opinion it was said:

"In such case, where no affirmative fault, misfeasance or affirmative wrong was committed by the defendant or is imputed to him, it is essential to sustain a recovery, to establish that the defendant owed some clear, specific, legal duty to the party injured, which was violated." (p. 504.)

The tenant was aware of the defective condition when the premises were leased, and the court held that because the landlord owed him no duty which would have entitled the tenant to recover in case he had been injured, the servant could not recover; that the rule of *caveat emptor* always applies to contracts of letting, "with one or two recognized exceptions" (p. 504), which, it was said, had no application to that case. The opinion cites, among other authorities, *McGlashan v. Tallmadge*, (N. Y. Supr. Ct.) 37 Barb. 313, 315. We have examined the cited case, which holds that where the landlord was guilty of fraud or where a nuisance was created by his wrongful act, the rule of *caveat emptor* does not apply. The case

of *O'Brien v. Capwell*, (N. Y. Supr. Ct.) 59 Barb. 497, which defendant cites, is not squarely in point, nor is the reasoning upon which it rests satisfactory.

In the present case the dangerous nuisance was not the result of the failure to repair. It was as much a death trap and a nuisance when the opening was made and the defective cover placed there as it was when the accident occurred. Another case cited by appellee is *Perez v. Rabaud*, 76 Tex. 191, 13 S. W. 177, 7 L. R. A. 620, which squarely denied the right of a servant of the tenant to recover against the landlord for injuries caused by a defective and dangerous cistern, and the decision is placed upon the ground that the servant can not be classed as a stranger, but can recover only where the tenant could have recovered if the latter had been injured. It should be noted that the defective condition of the cistern was alleged to have resulted "from age and natural decay," and that the petition set up a promise of the landlord to repair. The decision follows, and is based upon, the cases of *O'Brien v. Capwell*, supra, and *Jaffe v. Harteau*, 56 N. Y. 398. In the Jaffe case, which is frequently referred to as a leading case, the wife of the tenant was denied the right to recover. Of course, that case can not be recognized as an authority here, because it is directly opposed to *Moore v. Parker*, 63 Kan. 52, 64 Pac. 975, 53 L. R. A. 778, where it was held that the wife of the tenant could maintain the action. The opinion also relies to a great extent upon the general rule stated in Thompson on Negligence, 1st ed., vol. 1, p. 323, 2d ed., §§ 1130-1133, to the effect that in the absence of fraud or deceit there is no implied agreement that the premises are fit for occupation, and that the rule extends to servants of the tenant. The Texas case may have been decided correctly upon the facts. It is distinguishable from the present case by the fact that there is here no reliance upon a promise to repair, or, in fact, upon the breach of any covenant, express

Bailey v. Kelly.

or implied, under the law of landlord and tenant. The liability of the appellee, as it appeared at the close of appellants' evidence, does not rest upon any contractual relation of landlord and tenant. If liable at all, his liability springs from his negligent act in creating a dangerous nuisance upon his premises and which he is held, with his tenant, to have maintained jointly, because he received the rent for the premises with the nuisance existing thereon. (*Rosewell v. Prior*, [Eng.] 2 Salk. 459.)

"It is also, no doubt, true that in the leasing of premises there is no implied warranty that they are fit for a particular use, and that liability, if any, in this class of cases does not spring from contract but must be predicated upon the negligent act or omission of the landlord, the same being the proximate cause of the injury, in reference to a matter where it was his duty to use ordinary care out of respect to rights of others liable to be thereby directly involved, and for an injury thus arising a recovery may be had where there is no such contributory negligence on the part of the plaintiff as would bar the remedy in other actions for negligence." (*Reichenbacher v. Pahmeyer*, 8 Ill. App. 217, 218.)

A case frequently cited in connection with the nuisance doctrine is *Godley v. Hagerty*, 20 Pa. St. 387, where the owner erected a building for rent in so imperfect a manner that it was incapable of supporting the burden imposed upon it, and it fell, injuring an employee of the tenant. The owner was held liable for the injury. It was said in the opinion:

"When a man erects a building to rent, the law requires a reasonable share of that regard for human life which he is sure to manifest when he builds for his own inhabitance. If he will build, as is charged and found in this case, 'loosely, carelessly, unskillfully, and negligently,' and with 'insufficient and improper materials,' whereby the innocent and unsuspecting are injured, let him respond in damages." (p. 397.)

*Cokeby &c. v. Gutkese*, 80 Ky. 598, 44 Am. Rep.

499, was an action by the daughter of the tenant for injuries she received by falling through a defective flooring into a privy vault. The action was brought against the owner, alleging that he knew the dangerous condition of the floor and concealed the fact from the lessee, and that neither the plaintiff or her father, by the exercise of ordinary care, could have discovered it. The Kentucky court held the petition good as against a demurrer.

Of course, in the present case the tenant himself could not recover for any injury he sustained as a result of the nuisance which he participated in maintaining, and the existence and danger of which were not concealed from him by the owner. The appellants, however, might have joined him as a defendant in the present action or have sued him separately. What reason can be suggested for denying to a person injured by the gross neglect of both landlord and tenant the right to recover of the landlord merely because the tenant in a like case could not maintain an action against the landlord? The tenant knew of the dangerous trap; the servant, so far as the evidence discloses, was ignorant of the peril and, without fault or culpable negligence on her part, came to an untimely death.

We have purposely omitted citations to cases where the landlord retained control over the premises or some portion of them, such as cases involving tenement buildings and rooming houses, and cases of injuries caused by unguarded elevator shafts where the landlord controlled the operation of the elevator. In such cases the owner's liability arises from the neglect of a duty which he manifestly owes to all persons lawfully upon the premises. *Kinchlow v. Elevator Co.,* 57 Kan. 374, 46 Pac. 703, is cited and relied upon by the appellant. In that case the landowner, who was in possession and control of the premises, maintained thereon a dangerous nuisance by which a boy in the employ of a

Bailey v. Kelly.

licensee of the landowner was injured. The court
applied the maxim *sic utere tuo ut alienum non lædas,*
and held the owner liable because he had maintained
upon his premises a trap or pitfall unguarded and liable
to cause injury to others; but the case is not directly
in point for the reason that the owner was in possession
and control of the premises.

A case which fully recognizes the principle running
through the cited cases is *Moore v. Parker,* 63 Kan. 52,
64 Pac. 975, 53 L. R. A. 778. The trial court sustained
a demurrer to the petition and the judgment was re-
versed. The wife of the tenant of a farm was injured
by the giving away of a platform over a well intended
for domestic use. The petition alleged that the
owner of the premises constructed the platform of
defective materials and that at the time the premises
were leased he knew it was in a dangerous condition
and that he negligently and fraudulently concealed the
fact and failed to disclose to plaintiff or her husband
the defects, which were not obvious and could not be
discovered by the exercise of ordinary care. It was
ruled in the syllabus:

"A landlord is not an insurer or a warrantor, nor is he
compelled to exercise constant care and inspection; but
if he knows that the premises which he is about to let
are defective and in a dangerous condition, especially
if such dangerous or defective place is not obvious or
discoverable to the tenant by the exercise of ordinary
care, and he does not inform the latter of such defective
or dangerous place, and injury is occasioned thereby to
the tenant or a member of his family who is not aware
of such defective or dangerous place, while in the exer-
cise of ordinary care, the landlord is liable in damages.
The law requires good faith on the part of the landlord
toward his tenant."

It will be observed that the petition alleged the land-
lord's knowledge of the nuisance, his concealment of the
fact from the tenant, and that it was unknown to plain-
tiff or to the tenant, and could not be discovered by the
exercise of ordinary care. The demurrer admitted

these averments. In the present case the appellee contends that the evidence fails to show that he knew of the dangerous condition of the cistern or that he concealed it from the tenant; and, further, that it conclusively appears that whatever defect existed was obvious and discoverable by the tenant. In fact, the tenant admitted in his testimony that he knew the conditions from the time he went into possession, although he says there was nothing which induced him to believe them to be dangerous.

The courts are at variance upon the question whether or not it is necessary to show actual notice of the dangerous condition to the owner in order to establish his liability to persons injured thereby. The numerical weight of authority would seem to require proof of actual notice. However, in *Hines v. Willcox*, 96 Tenn. 148, 33 S. W. 914, 54 Am. St. Rep. 823, the landlord was held liable to a tenant for injuries caused by a defect in the premises which the landlord concealed from the tenant when the lease was made and which defect was known to the landlord or might have been known by him in the exercise of reasonable care. In the opinion it was said:

"We think the great weight of authority is that, if a landlord lease premises which are, at the time, in an unsafe and dangerous condition, he will be liable to his tenant for damages that may result, if he knows the fact and conceals it, or if, by reasonable care and diligence, he could have known of such dangerous and unsafe condition, provided reasonable care and diligence is exercised by the tenant on his part." (p. 160.)

The case has been criticised by other courts for extending the rule and holding the landlord liable for defects of which he has only constructive notice, that is, making him liable not only for failure to disclose defects of which he knows, but also for failure to make known defects which he could have discovered by reasonable diligence. (See *O'Malley v. Twenty-five Associates*, 178 Mass. 555, 60 N. E. 387, and critical note

in 34 L. R. A., n. s., 799-802.)    But in *Irvine v. Wood et al.*, 51 N. Y. 224, a case cited and approved in numerous decisions, the same rule of constructive notice was applied and the owner was held liable, as well as the tenant, for damages to one passing along a public street, who stepped upon the iron cover of a coal-hole which turned and caused him to fall through it.    In *Moore v. Parker*, 63 Kan. 52, 64 Pac. 975, 53 L. R. A. 778, the case of *Hines v. Willcox* is approved and an excerpt quoted stating the doctrine that constructive notice is sufficient.    The question, however, was not decided, for the reason that the petition to which the demurrer was erroneously sustained in that case alleged that the landlord had actual notice.    In *Timlin v. S. O. Co. et al.*, 126 N. Y. 514, 27 N. E. 786, the court cites with approval the case of *Todd v. Flight*, (Eng.) 9 C. B., n. s., 377, where it was said that an action will lie against an owner who, with knowledge, leased his premises in a dangerous condition, that is, in such a condition as to be a nuisance, where damage was caused to a third party after the leasing.    In the opinion in the principal case, Peckham, J., used this language:

"I think that even if he do not create it, yet if, to his knowledge, it exist on his premises at the time of the demise, and is of a character dangerous to the public or an adjoining owner, or if he were in truth ignorant, and yet by the exercise of reasonable care and diligence he would have known of its existence, there is no principle which can exempt him from responsibility any more than if he created the nuisance himself."    (126 N. Y. 525.)

There was some evidence tending to show that the opening in the platform was made and the insufficient cover attached sometime in 1907 previous to the letting. Whether the owner created the nuisance himself or whether it was done by some tenant then in the occupancy of the premises does not appear, and is not controlling.    Ever since *Rosewell v. Prior*, (Eng.) 2 Salk. 489, it has been held that if the nuisance is created by a

tenant, and thereafter the landlord takes possession and relets the premises to another with the nuisance remaining thereon, he is liable the same as though he created it in the first instance. For the reasons stated, we are of the opinion that it was for the jury to determine whether or not the appellee knew of the dangerous condition of the premises at the time of the letting, or in time to have abated the nuisance before the injury occurred, or should have known of it by the exercise of ordinary care; and that in cases where a nuisance dangerous to life is created by the owner on his premises, or through his gross negligence is suffered to remain there, he can not by leasing the property to another avoid his own liability to any person who is rightfully upon the premises and who, without fault, is injured by reason of such nuisance. And this liability extends to a servant of the tenant, notwithstanding the tenant, by reason of his own fault or neglect or knowledge of the danger, could not have maintained an action against the owner for any injury suffered by himself.

It was error to sustain the demurrer and the judgment is reversed and a new trial ordered.