Bailey v. Kelly.

---

No. 19,099.

MILTON E. BAILEY and LOUISA R. BAILEY, *Appellees,*
v. JOHN KELLY, *Appellant.*

### SYLLABUS BY THE COURT.

LANDLORD AND TENANT—*Dangerous Cistern—Injury to Servant of Tenant—Landlord Not Liable.* A landlord leased vacant property upon which there was a cistern covered by a loose lid lying upon a slightly raised platform. The lease was without warranty or covenant to repair on the landlord's part. The covering of the cistern was exposed to plain view and its character was observed by the tenant when he entered. The tenant used the cistern for nearly two years in

this condition, when on a laundry day the lid was not carefully replaced after a drawing of water and a servant of the tenant stepped on a corner of the lid lying over the opening into the cistern, was precipitated into the cistern, and was drowned. The cistern was located in a shed in the rear of the kitchen of a building used by the tenant for a restaurant. When the deceased commenced working for the tenant he pointed out to her the location of the cistern, but in six weeks' service which occasionally brought her in proximity to the cistern the fact that the lid was loose was not brought to her attention. It is held: (1) The landlord is not liable in damages for the death of the servant upon the theory that the cistern was a nuisance, or upon the theory that he was guilty of actionable negligence, or upon any other theory sustained by existing law; (2) the decision of this court rendered upon the occasion of a former appeal . (*Bailey v. Kelly*, 86 Kan. 911, 122 Pac. 1027), holding the landlord liable, is overruled.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed January 9, 1915. Reversed.

*Theo. Laing, F. W. Sturges, Fred W. Sturges, jr.,* all of Concordia, *C. L. Kagey,* and *R. M. Anderson,* both of Beloit, for the appellant.

*Park B. Pulsifer, Charles L. Hunt, A. L. Wilmoth,* and *A. M. French,* all of Concordia, for the appellees.

The opinion of the court was delivered by

BURCH, J.: This case was before the court on the occasion of a former appeal. (*Bailey v. Kelly*, 86 Kan. 911, 122 Pac. 1027.) The action was commenced against a landlord to recover damages resulting from the death of his tenant's servant who fell into a defectively covered cistern on the leased premises. The cistern was in a shed in the rear of the kitchen of a building used as a restaurant. The defect in the covering of the cistern existed at the time the premises were leased, was open to view, and the character of the covering was observed by the tenant when he took possession. The lease was without warranty and with-

out covenant to repair, on the landlord's part. At the first trial the court sustained a demurrer to the plaintiff's evidence on the ground that the landlord rested under no liability. This court held otherwise, as indicated in paragraph one of the syllabus of the first opinion.

"Where a nuisance dangerous to life is created by the owner on his premises, or through his gross negligence is suffered to remain there, he can not by leasing the property to another avoid his own liability to any person who is rightfully upon the premises and who, without fault, is injured by reason of such nuisance; and this liability extends to a servant of the tenant, notwithstanding the tenant, by reason of his own fault or neglect or knowledge of the danger, could not have maintained an action against the owner for any injury suffered by himself." (Syl. ¶ 1.)

At the second trial the court, after it had overruled a demurrer to the plaintiff's evidence, instructed the jury in accordance with this decision and a verdict was returned for the plaintiff. The defendant appeals and renews his contention that the law does not authorize the recovery of damages from him.

A majority of the members of the court are convinced that the former decision was wrong. That the former decision was substantially unsupported by authority and was rendered against the settled law of this country is clear. (Notes, 34 L. R. A., 824; 34 L. R. A., n. s., 798; 39 L. R. A., n. s., 378; 48 L. R. A., n. s., 917; 50 L. R. A., n. s., 286; see, also, 49 L. R. A., n. s., 1120.) The notes cited refer to others and present a comprehensive view of the case law on the subject.

The court was conscious of the fact that it was extending the liability of the landlord as that liability had been previously understood, but believed the extension to be justifiable. The distinction between the undefined body known as the public and a group of persons comprising a restaurant keeper, his family, and his

employees becomes quite shadowy. That such a group, composed in part of persons drawn from the general public, would be assembled on the premises by the tenant was fairly within the landlord's contemplation. When the landlord takes rent for premises containing a public nuisance he is liable. In this case the landlord took rent for the use of premises containing a pitfall which a portion of the public selected by the tenant was obliged to encounter. Consequently the court applied the nuisance theory and held the defendant liable.

The difficulty with this decision is that it is not closely discriminative with respect to facts, ignores ideas of legal duty which experience has demonstrated to be well founded and fair, and involves the law in confusion concerning some of its fundamental principles.

A description of the leased premises appears in the former opinion (86 Kan. 912), and need not be repeated in full. The cistern was covered by a wooden platform about four feet square, raised four inches from the ground, upon which the lid or covering lay. The structure was in plain view, and the lid was adequate as a covering. Its only defect consisted in the fact that it might be displaced, and the casualty occurred in the most fortuitous way. Laundry work for the restaurant was done twice a week, the washing machine being operated by a gasoline engine. Water for this work was drawn from the cistern by means of a bucket and rope. The covering would usually be laid back against the coal house when water was being procured. At other times it was kept over the opening. On this occasion laundry work was in progress. The tenant had just drawn some water from the cistern, and had gone back to the washing machine. The covering was not replaced carefully, and was lying so that one corner was over the opening into the cistern. The deceased stepped on this corner of the covering,

which allowed her to fall into the cistern, and the covering then righted itself and fell into place over the opening.  For almost two years the tenant had used the cistern in safety in exactly the same condition, and if the covering had been used according to its purpose and design the accident would not have occurred.

Under the foregoing circumstances it smacks somewhat of hyperbole to call the cistern a nuisance, the characteristic of which is that it must or will injure that portion of the public who may be compelled to come in contact with it. (Black's Law Dictionary, title, Nuisance.)

Broadly speaking, "nuisance, *nocumentum,* or annoyance, signifies anything that worketh hurt, inconvenience or damage." (3 Blackstone's Commentaries, ch. 13, p. 216.)  But in legal phraseology the term is applied to that class of wrongs that arises "from the unreasonable, unwarrantable or unlawful use by a person of his own property . . . producing such material annoyance, inconvenience, discomfort or hurt, that the law will presume a consequent damage." (1 Wood on Nuisances, 3d ed., § 1.)

Unless prejudice or damage threaten or result as a necessary consequence of the act done there is no nuisance.

"It is a nuisance . . . to do any act therein that in its consequences must necessarily tend to the prejudice of one's neighbors." (Blackstone's Commentaries, ch. 13, p. 218.)

"In order to create a nuisance from the use of property a material, substantial and appreciable injury must be occasioned to the person or property of another." (Joyce, Law of Nuisances, § 22.)

"Injury and damage must concur as results of an act or thing in order to make it a nuisance." (1 Wood on Nuisances, 3d ed., § 5.)

A nuisance may result from negligence.  But negligence is not involved in a nuisance action, either as essential to the cause of action or as a ground of defense. (29 Cyc. 1155.)

In this case the evidence indicates that before the lease was made the building was locked, and prospective tenants procured the key from the landlord in order to inspect the premises. In any event the property did not threaten the public or any portion of the public. The cistern was occasioning no injury or damage to any one, rendering its maintenance intolerable. The change of possession from the landlord to the tenant did not change the lawful character of the landlord's conduct. When the deceased came upon the premises and commenced to work for the tenant she acquired no cause of action against either the landlord or the tenant for injuries suffered or threatened on account of the cistern, or for the abatement of the cistern as a nuisance, under any known principle of law. If a master negligently furnish his servant an unsafe place in which to work nothing is gained and confusion results from calling the place a nuisance. The vehemence of the term adds nothing to the situation and relations of the parties, and can not justify a departure from the law of negligence applicable to them. The present case is one of that character, and the nuisance theory, when applied to it, breaks down.

The fact that the front room of the building was open to such portion of the public as desired to patronize the restaurant has no relevancy to the subject under consideration. The situation at the rear of the building was precisely the same as that of any private family employing servants to perform various household functions.

The result is that the facts fail to bring the case within the category of those nuisance cases in which the lessor has been held to be liable for injuries sustained by third persons.

It is admitted that the ordinary inspection which the landlord has the right to expect a tenant will make did in fact disclose to the tenant the condition of the cistern. He could not have recovered if he had been in-

Bailey v. Kelly.

jured.   There is no contention that the lease was not
made in perfect good faith, and there is no justification
for speaking of the landlord's conduct as gross or
wanton.   The deceased was sixteen years old, large for
her age, healthy, intelligent, and in possession of all
her faculties.   When she commenced working for the
tenant he pointed out to her the location of the cistern,
but the jury found that in some six weeks' service
which occasionally brought her in proximity to the
cistern the fact the cover was loose was not brought to
her attention.   Only upon this narrow margin could
recovery be had, even from the tenant, and notwith-
standing the shocking character of the accident, reck-
less indifference to the safety of others does not appear
on the part of anybody responsible for the condition of
the premises.   If, however, it once be conceded that the
law of negligence governs the case, want of privity
between the landlord and the tenant's servant defeats
the action, however indefensible the conduct of the
tenant in placing the servant at work in proximity to
the cistern.

The undertaking of the landlord is not to furnish
premises to be used as a place or instrumentality for
the. accomplishment of certain purposes by others,
which he is bound to make fit for the contemplated use,
like staging, scaffoldng, hoisting apparatus, and other
appliances, within the rule of *Heaven v. Pender*, L. R.
11 Q. B. Div. 503.   (See *Aaron v. Telephone Co.*, 89
Kan. 186, 131 Pac. 582.)   The lessor grants an estate
in the premises  to the lessee and surrenders dominion
over them to the lessee under conditions as definitely
understood as if expressed in a written instrument of
lease.

"The mere letting without additional stipulations by
the lessor, simply implies that he holds the title and that
the lessee shall quietly enjoy the use and occupation
during his tenancy; and not that the premises are or
shall be in any particular condition or state of repair,

or that they are suitable for the purpose for which they were let." (2 Cooley on Torts, 3d ed., p. 1276.)

The tenant may or may not invite third persons, servants, patrons, guests, and others, upon the premises, as he pleases, but the landlord extends and can extend no such invitation, either expressly or by implication. He can not himself enter upon the tenant's possession, even to repair, unless the right be reserved or permission obtained, much less grant licenses to others. The result is, the negligence theory of liability, suggested in the syllabus of the former opinion, breaks down for lack of any legal duty on the landlord's part to sustain it.

The principle upon which the lessor of premises is held liable to third persons for nuisances existing at the time the tenancy was created is this: The landlord having posession and control of his land, or the right to possess and control it, owes the public, who are suffering or must suffer from, the nuisance, the duty to abate it and must respond in damages for a breach of the duty. The duty and the liability are not satisfied by the simple act of leasing the premises, and continue until the nuisance is abated.

Much is said in the decisions concerning a presumption that the landlord contemplates a continuance of the nuisance while the tenant is in possession. The presumption is gratuitous and fictional as often as otherwise. The rent reserved is frequently reduced because of the condition of the premises, and with the expectation that the tenant will put them in order. Frequently the landlord takes from the tenant a covenant that the tenant will repair. The majority of courts hold that the liability of the landlord is not ended because of a lease containing such a covenant, and it seems sufficient to say that the landlord's obligation having once arisen he can not shift or evade or discharge it by leasing to another, but that the obligation continues until the public peril is actually removed.

When the condition of property is such that it does not impair the public safety the landlord owes no duty to the public or to any member of the public to change the condition.  When he comes to deal with a specific individual as a prospective tenant, he owes that individual no duty except not to entrap him by concealing facts which ordinary inspection would not reveal, and he owes no other individual any duty at all.  The landlord may in perfect good conscience offer his property, such as it is, to a tenant who takes it, such as it is, on satisfactory terms, just as the landlord and tenant did in this case.  This is true although buildings may be in tumble-down condition, excavations may be unguarded, or the premises may be otherwise uninhabitable or in unsafe condition for use.  The only exception is that of property devoted to public use, such as wharves, railroads, elevators, public halls, and the like.  Negotiations having been fairly concluded and possession having been given to the tenant, no obligation on the part of the landlord to safeguard or to repair remains unfulfilled.  After that, no obligation to repair arises during the tenancy unless the landlord has contracted to do so.  This is true even although the tenant create a nuisance on the premises, dangerous to the public.

"It is a rule of the common law, applicable here, that 'the occupier and not the landlord is bound as between himself and the public so far to keep the premises in repair that they may be safe for the public.' "  (De Tarr v. Heim, 62 Kan. 188, 192, 61 Pac. 689.)

The principles just stated govern the present controversy.  If it be unsound in morals or otherwise contrary to public policy to rest the duty of making and keeping premises fit for occupation and use upon occupation and use and not upon title, the existing law should be abrogated and a new set of rules should be adopted.  The court does not have before it the

result of any social survey of the subject, and it is not perceived that the established usage is so offensive to the sense of justice that the court should anticipate legislation by proper authority, or if it does, leap at once to the unconditional remedy of downright damages. To engraft an exception upon the law for this particular case is to recognize the first of a wilderness of single instances. To cistern cases must soon be added cases involving defective railings about steps, stairways, porches, and areas, whereby the tenant's servants are injured. If after the fact of a distressing accident a jury should conclude to find negligence in maintaining some structure or place where the tenant's children invited some friends to play, the landlord must respond in damages. The list is certain to grow until it may be impossible to say what is the rule and what an exception. If the property law of the state is to be changed and a general duty is to be imposed upon the landlord to make his premises secure for use by tenants and whomsoever a tenant may invite there, the legislature should create the obligation and not the courts.

Instead of being genuinely progressive, the former decision was merely arbitrary and it is overruled.

The judgment of the district court is reversed and the cause is remanded with direction to sustain the demurrer to the plaintiffs' evidence.

JOHNSTON, C. J., MASON, J., and BENSON, J., dissenting.