McLeod v. Palmer.

No. 21,578.

N. C. McLEOD et al., *Appellees,* v. GEORGE H. PALMER, as Executor, etc., et al. (C. P. SEWARD et al., *Appellants*).

SYLLABUS BY THE COURT.

1. FORMER APPEAL—*Questions Therein Decided.* The rule in *McLeod v. Palmer,* 96 Kan. 159, 150 Pac. 535, held to be applicable and controlling as to the questions therein decided.

2. OPENING UP JUDGMENT—*Publication Service—Requisites of Showing to be Made.* In a proceeding to open up a judgment rendered on service by publication only, the defendant making the application, among other things, must show that he did not have actual notice of the action in time to appear and make his defense, and the fact that he was under disability by reason of confinement in the penitentiary furnishes no sufficient reason for opening the judgment if before his disability he had actual notice of the pendency of the action in time to enter his appearance and present his defense.

3. SAME—*Assignment Pending Action—Rights of Assignee.* Persons to whom the rights of defendant were assigned after the commencement of the action, and after he had sufficient actual notice thereof, obtained substantially the same rights as the assignor possessed and are bound by the notice which he had.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed June 8, 1918. Affirmed.

*F. W. Sturges,* and *Fred W. Sturges, jr.,* both of Concordia, and *T. F. Garver,* of Topeka, for the appellants.

*Charles L. Hunt,* of Concordia, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from an order of the trial court denying a motion to vacate and open up a judgment. Judgment was announced on November 14, 1913, in favor of the defendants who appeared, but in favor of plaintiffs as against those defendants who defaulted, and on appeal the judgment was slightly modified by this court and affirmed. (*McLeod v. Palmer,* 96 Kan. 159, 150 Pac. 535.) The opinion on that appeal sets forth the facts. Ladd Almon Knapp, one of the defendants against whom judgment was rendered, was, on June 2, 1913, sentenced to the penitentiary of South Dakota for a criminal offense, and on June 3, 1913, before he was im-

McLeod v. Palmer.

prisoned in the penitentiary, he executed and delivered a deed conveying all his right, title, and interest in the land involved in this action to Seward, Foley, and Heffron, the attorneys who had defended him in the criminal prosecution referred to, as compensation for their services. The deed contained a covenant that the grantor was seized of an interest in the land, had a right to convey the same, and that his interest was free from incumbrances; but it contained no covenant of warranty. On May 11, 1914, these attorneys, as the successors to Knapp's interest, filed this motion asking that the judgment be vacated on three grounds: (1) That it was unwarranted under the pleadings, (2) that when the action was pending and the judgment rendered Knapp was under disability by reason of his confinement, and (3) that publication service only was made, and neither Knapp nor the successors to his interest had actual knowledge of the pendency of the action in time to appear and make a defense.

From the evidence produced at the hearing of the motion, it appears that Knapp had correspondence concerning the land and the Dodson estate with Palmer, the executor, beginning in the spring of 1912. In a letter to Knapp on June 1, Palmer said: "There is some litigation concerning the farm as you probably know, which has not yet been decided, and we do not know what the outcome of it will be." On June 8, in another letter, he said: "These attorneys (referring to plaintiffs), however, procured a quitclaim deed from Knapp, and have brought a suit for one half the farm, which suit is now in court. If they win their suit of course there will be just one half as much property for the heirs named in the will at the final decision." Besides the information so obtained, Knapp admitted that he had definite knowledge of the trial in November when the judgment was announced, and long prior to its final entry on February 25, 1914. The appellants who are seeking to have the judgment set aside were actually informed of the proceeding on November 1, and, although they were assignees of Knapp and as such were included in the publication service and had an opportunity to come in and resist the entry of the judgment, no action was taken by them. Knapp, as well as the appellants, might have appealed from the judgment after it was entered, but they allowed the appeal to proceed to final

determination without asserting their claims or questioning the sufficiency and propriety of the judgment.

On this appeal from the refusal of the trial court to open up the judgment, they insist that the finding of the trial court in favor of the defendants appearing inured to the benefit of those defaulting, and that the judgment as to the latter was extrajudicial and void. This proposition was fully considered and determined in the first appeal, when it was decided that it was competent for the court to give judgment in plaintiffs' favor as against the defaulting defendants, although it developed later in a trial that plaintiffs' claims were not sustained as against the defendants who did defend. The contention now made was elaborately presented on a petition for a rehearing, and after a reëxamination it was again rejected, and the question must now be regarded as finally and definitely settled.

We find nothing substantial in the contention that the judgment is void because it is outside of the pleadings. In their petition the plaintiffs asked for the recovery of a one-half interest, and no more than that was recovered. While the judgment is not as specific as it might have been, an examination of the pleadings and judgment leaves no doubt about the extent of the interest asked and recovered by the plaintiffs, nor of the validity of the judgment.

The remaining and principal question in this appeal is: Did Knapp and his assignees bring themselves within the provision of section 83 of the civil code authorizing the reopening of the judgment? To secure a reopening under the cited section, the mover must within three years of the rendition of the judgment give notice of his intention to make the application, file a full answer to the petition, pay the costs if required, and then he must show to the satisfaction of the court that during the pendency of the action he had no actual notice thereof in time to appear and make his defense. Appellants filed no answer when the application was made, and the hearing was allowed to proceed over objection without compliance with that requirement. The motion or application, however, set out a brief statement of the defense, and at the end of the hearing an answer was filed by permission of the court. If this is treated as a substantial compliance with the code, the question still

remains whether, under the testimony offered, the judgment should have been reopened.

In regard to actual notice of the litigation it appears that Ladd A. Knapp, through whom the appellants claim, was committed to the penitentiary in June, 1913, and was under disability from that time until the judgment was entered. However, he was under no disability when the suit was begun and service by publication was made, nor for about two years afterwards. In July, 1911, the action was begun, and he learned of the litigation, as we have seen, a year before his conviction and imprisonment. In May, 1912, he wrote asking for a copy of his mother's will, and he was advised that it had been probated, and also that litigation concerning the farm about which he was inquiring had been commenced. The copy of the will was sent to him on June 8, 1912, and he was then told that a suit had been brought by plaintiffs to recover one-half of the farm, and that if they should win their suit only one-half would remain for him and the other heirs. In the same connection he was informed of the divorce of his mother, upon the validity of which the plaintiffs' interest in the land depended, and that attorneys had been employed to defend and protect the interests of the heirs. In November, 1912, he wrote a letter inquiring if the decree of the court had been rendered. Thus, it will be seen that he knew that an action had been instituted, he had been told the names of the plaintiffs, something of the basis of their suit, and the extent of the recovery they sought. It is claimed that Knapp was not told the name of the court in which the action was brought, and supposed it was in the probate court. It has been held that it is not essential to a sufficient notice that a party should be fully informed of the court in which the action is commenced, where he is definitely informed that a suit has been begun and is pending against him. (*Beckwith v. Douglas*, 25 Kan. 229.) He should have known that the relief sought for the recovery of land could only be obtained in the district court. He had read the will and knew that a share of the farm had been devised to him, and that an action to recover one-half of the devised property was pending. On such information ordinary prudence required him to inquire and take steps to protect his interest, and upon the evidence it cannot be said that the finding of the

16—Kan.—3099

court of actual notice is without support. As the transfer was made it must be held that the appellants were bound by the notice he had, and that they have no better right than he had. Besides, it appears that they slept on their rights several months after the deed was executed before the rendition of the judgment sought to be opened.

The judgment of the district court is affirmed.

DAWSON, J. (dissenting in part): I am not yet reconciled to the first decision of this case (96 Kan. 159, 150 Pac. 535), and the court could, in my opinion, still straighten out the matter, as it did do in *Bailey v. Kelly,* 93 Kan. 723, 145 Pac. 556, when it overthrew its earlier decision in that case, recorded in 86 Kan. 911, 122 Pac. 1027. I do not deny that the present decision logically and necessarily results from an adherence to the judgment and decision in 96 Kan. 159; but, in furtherance of justice, I would wipe out both decisions and lay hold of the matter anew.