## FRASER v. KRUGER et al.

### (Circuit Court of Appeals, Eighth Circuit. April 28, 1924.)

### No. 6372.

1. Landlord and tenant ⟜167(1)—Duties of landlord to persons on premises at tenant's invitation same as to tenant.

Duties and liabilities of landlord to persons on leased premises by invitation of tenant are same as those owed to tenant himself.

2. Landlord and tenant ⟜164(1), 165(1), 167(8)—Subtenant, servant, or guest of tenant entitled only to same right tenant has against landlord for injury.

A subtenant, servant, employee, or guest of tenant is so identified with tenant that his right of recovery for injury as against landlord is same as that of tenant, if he suffers injury.

3. Landlord and tenant ⟜164(2), 167(3)—Liability of landlord for injuries, in absence of agreement to repair or concealment, stated.

Where there is no agreement by landlord to repair and he is not guilty of any fraud or concealment by failing to disclose hidden defects of which he has knowledge, tenant takes risk of safe occupancy, and landlord is not liable to tenant or invitees for personal injuries sustained.

4. Landlord and tenant ⟜167(8)—Liability of landlord for injuries suffered on premises leased for public or semipublic purpose stated.

Where premises are leased for public or semipublic purposes, and at time of lease conditions exist which render premises unsafe for purpose intended, or constitute a nuisance, and landlord knows or by exercise of reasonable care ought to know of conditions, and a third person suffers

---

injury on account thereof, landlord is liable, because third person is there at invitation of landlord, as well as of tenant.

5. **Landlord and tenant ⊚⟶167(2)—Landlord liable to third person injured on premises.**

   Landlord is liable as owner of leased premises to third persons, who do not derive their right to be where they are from tenant, but stand strictly as strangers, and who suffer injuries from nuisance existing at time of letting.

6. **Landlord and tenant ⊚⟶167(2)—Landlord liable for injuries caused by nuisance on premises.**

   Where nuisance on premises is dangerous to general public, to persons not on premises, lease of premises does not relieve landlord, but duty continues as to such person so long as nuisance remains unabated; but it is different where nuisance involves no danger to persons off premises and premises are taken for a private purpose.

7. **Landlord and tenant ⊚⟶164(6)—Landlord not liable for injuries due to latent defect of which he has not actual knowledge.**

   Landlord is not liable for personal injuries suffered by tenant on account of latent defect on premises, unless he has actual knowledge of defect, and it is not enough that he might have had such knowledge, if he had exercised reasonable care.

8. **Landlord and tenant ⊚⟶169(4)—Burden of proof on person injured to show defective condition existed at time of letting.**

   In action against landlord by employee of tenant, who was making repairs, for injuries received on elevator, burden of proof was on plaintiff to show that defective condition existed at time of letting, was known to defendant, and constituted latent danger, and not obvious one, and that defendant failed to disclose same to tenant.

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Action at law by Robert A. Fraser against John Kruger and another. Judgment for defendants, and plaintiff brings error. Affirmed.

A. A. Tenner, of Minneapolis, Minn. (L. T. Van Slyke and H. Agor, both of Aberdeen, S. D., on the brief), for plaintiff in error.

E. B. Harkin, of Aberdeen, S. D., for defendants in error.

Before LEWIS, Circuit Judge, and SYMES and PHILLIPS, District Judges.

PHILLIPS, District Judge. Robert A. Fraser, plaintiff in error, hereinafter referred to as plaintiff, brought an action against John Kruger and Ira Kruger, defendants in error, hereinafter referred to as defendants, to recover damages for personal injuries. The defendants were the owners of a building located in Aberdeen, S. D. On the 1st day of July, 1920, they leased it to the Booker Fruit Company (hereinafter called the Fruit Company). While the term of the lease commenced July 1, 1920, and ran for a period of five years, it was understood and agreed at the time the lease was executed that possession of the building would not be surrendered to the Fruit Company until about August 1, 1920. The Fruit Company began to move in a few days before August 1, 1920. The defendants had some machinery stored on the second floor. They moved the last of it out on August 4, 1920. The Fruit Company, with the consent of the defendants, was remodeling the building to suit its purposes. The plaintiff was em-

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ployed by the Fruit Company as its foreman, and commenced to work July 20 or 22, 1920. Four men were already engaged in the work when plaintiff took charge. On August 7, 1920, the day of the accident, plaintiff had two or three men working on the first floor of the building, two on the platform, and another one, Weger, was working on the second floor. About noon of that day Weger started down from the second floor, using the elevator. A small rope, known as the equalizing rope, used for the purpose of starting and stopping the elevator, caught at a point about eight feet above the floor of the elevator and prevented it from descending, while the motor continued to run, causing the cable to become slack. Weger called to plaintiff that something was the matter with the elevator, and plaintiff went to the elevator shaft and looked up. About this time the small rope broke and the elevator descended. Plaintiff failed to get out of the way in time, and it caught his foot, causing the injuries complained of.

There was a safety device on the elevator, so arranged that when the cable slackened it released a spring, which caused two sharp dogs to protrude and engage the guides on the side walls of the elevator shaft, and thus prevent the elevator from descending. After the accident one Resseguie was called to repair the elevator, and discovered that two blocks, 2x4x6 inches, had been nailed into the safety device, so that when the cable slackened the spring was not released and the dogs did not engage the guides. There was evidence that the dogs had been catching on the side walls of the elevator shaft and preventing the elevator from working properly, and it was the opinion of some of the witnesses that the blocks had been put in the safety device to stop this interference.

Plaintiff and other employees of the Fruit Company used the elevator a great many times. In the alteration of the building the Fruit Company removed the stairway in the front of the building and was going to install another one in the rear, so that for a period of 10 days immediately before the accident the elevator was the only means of ingress to and egress from the second floor.

By the terms of the lease the owners and lessors were expressly relieved from making any restoration or repair to the elevator.

The only witnesses called who had been in and about the premises prior to the accident were the two defendants, who were called under the South Dakota statute for cross-examination, and the plaintiff and Weger. The defendants denied any knowledge of any defect in the safety device and of the placing therein of the wooden blocks. Weger testified:

"I am not able to state of my own knowledge whether there was anything done by way of repairing or fixing or alteration on that elevator while I was there before Mr. Fraser was hurt."

Plaintiff testified that he made no "inspections, examinations or tests," and did not look over the elevator in any way before he was hurt. Resseguie testified that the blocks holding the safety device from functioning were plainly observable and that any one would notice them.

At the close of plaintiff's evidence showing substantially the foregoing facts, the lower court directed a verdict for the defendants. The correctness of that ruling is the sole question presented here.

[1, 2] The general rule is well settled that the duties and liabilities of a landlord to persons on the leased premises by the invitation of the tenant are the same as those owed to the tenant himself. A subtenant, servant, employee, or guest of the tenant is ordinarily held to be so identified with the tenant that his right of recovery for injury as against the landlord is the same as that of the tenant would be had he suffered the injury. This is true because such persons enter under the same title as the lessee, and not at the invitation express or implied of the landlord. Bailey v. Kelly, 93 Kan. 723, 145 Pac. 556, L. R. A. 1916D, 1220; Baker v. Moeller, 52 Wash. 605, 101 Pac. 231; Hogan v. Metropolitan Building Co., 120 Wash. 82, 206 Pac. 959; Morgan v. Sheppard, 156 Ala. 403, 47 South. 147; Baum v. Ahlborn, 210 Mass. 336, 96 N. E. 671; O'Brien v. Capwell, 59 Barb. (N. Y.) 497; Huggett v. Miers, 2 K. B. (Eng.) 278, 1 B. R. C. 97, 77 L. J. K. B. (N. S.) 710, 99 L. T. (N. S.) 326, 24 Times L. R. 582, 14 Ann. Cas. 760; Lane v. Cox, 1 Q. B. (Eng.) 415, 66 L. J. Q. B. (N. S.) 193, 76 L. T. (N. S.) 135; Perez v. Rabaud, 76 Tex. 191, 13 S. W. 177, 7 L. R. A. 620; notes L. R. A. 1916F, 1081, 1140.

[3] Where there is no agreement by the landlord to repair the demised premises, and he is not guilty of any fraud or concealment by failing to disclose hidden defects of which he has knowledge, the tenant takes the risk of their safe occupancy, and the landlord is not liable to him or to any person entering under his title or by his invitation for personal injuries sustained by reason of their unsafe condition. Ames v. Brandvold, 119 Minn. 521, 138 N. W. 786; Clark v. Sharpe, 76 N. H. 446, 83 Atl. 1090, 41 L. R. A. (N. S.) 47; Korach v. Loeffel, 168 Mo. App. 414, 151 S. W. 790; Howard v. Washington Water Power Co., 75 Wash. 255, 134 Pac. 927, 52 L. R. A. (N. S.) 578; Morgan v. Sheppard, 156 Ala. 403, 47 South. 147; Sunasack v. Morey, 196 Ill. 569, 63 N. E. 1039; Harpel v. Fall, 63 Minn. 520, 65 N. W. 913; Clyne v. Helmes, 61 N. J. Law, 358, 39 Atl. 767.

In the recent case of Shew v. Hartnett, 121 Wash. 1, 208 Pac. 60, where the employee of a tenant was injured due to a defective elevator, the court said:

" 'In the absence of covenant on the part of the landlord to repair, no active duty is imposed on him to disclose apparent defects which are equally within the knowledge of the tenant, or which the latter might ascertain by due diligence, the rule of caveat emptor applying in such cases with full force; and in such cases the landlord is not liable for subsequent injuries resulting from such defects.' * * *

" 'No contractual relation having existed between the appellant and the respondent, and appellant having entered upon the premises only as the servant of the lessee, his right to recover against the respondent is in no manner superior to that of his employer.' * * *

" 'A painstaking examination of the authorities cited and many more induces the conviction that the exception to the rule of nonliability of the landlord for injuries arising from defects existing at the time the lease was made, in the absence of warranty or express agreement upon his part to repair, can soundly be extended only to injuries resulting from a failure of the landlord to disclose those obscure defects, not known to the tenant and not discoverable by a reasonably careful examination on his part, but actually known at the time to the landlord.' "

[4] Where premises are leased for public or semipublic purposes, and at the time of the lease conditions exist on the premises which ren-

der them unfit for the purpose intended or constitute a nuisance, and the landlord knows or by the exercise of reasonable care ought to know of the conditions, and a third person suffers injuries on account thereof, the landlord is held liable because such third person is there at the invitation of the landlord as well as the tenant. Colorado Mortgage & Investment Co. v. Giacomini, 55 Colo. 540, 136 Pac. 1039, L. R. A. 1915B, 364; note L. R. A. 1915B, 364.

[5] The landlord is also liable, as owner of the leased premises, to third persons, who do not derive their right to be where they are from the tenant, but stand strictly on their rights as strangers, and who suffer injuries from a nuisance existing on the premises at the time of the letting. Maloney v. Hayes, 206 Mass. 1, 91 N. E. 911, 28 L. R. A. (N. S.) 200, 3 N. C. C. A. 137; 16 R. C. L. p. 1074, § 593.

[6] And where the nuisance is one which is dangerous to the general public, to persons not upon the premises, a lease of the premises does not relieve the landlord but the duty continues as to such persons so long as the nuisance remains unabated. But where the nuisance involves no danger to persons off of the premises and a tenant has taken possession and control thereof under a lease for private purposes, the owner has no further right to invite persons to go upon the premises, and guests, servants, employees, and other persons who go upon the demised premises at the invitation of the lessee are in the same position as the lessee himself. Not being invitees of the owner he owes them no duty except as they may claim through the lessee. Bailey v. Kelly, 93 Kan. 723, 145 Pac. 556, L. R. A. 1916D, 1220; Missel v. Lennox (1st C. C A.) 156 Fed. 347, 84 C. C. A. 243.

Counsel for plaintiff relies principally on two cases, Hines v. Willcox, 96 Tenn. 148, 33 S. W. 914, 34 L. R. A. 824, 832, 54 Am. St. Rep. 823; Id., 100 Tenn. 538, 46 S. W. 297, 41 L. R. A. 278, 66 Am. St. Rep. 770, and Bailey v. Kelly, 86 Kan. 911, 122 Pac. 1027, 39 L. R. A. (N. S.) 378; Id., 93 Kan. 723, 145 Pac. 556, L. R. A. 1916D, 1220.

Hines v. Willcox, supra, laid down the doctrine that the landlord is liable for personal injuries suffered by the tenant on account of a latent defect on the leased premises, not only where he has actual knowledge of the defect, but also where by the exercise of reasonable care, he might have had such knowledge.

[7] It appears to us that this doctrine is manifestly unsound. The theory of liability on the part of the landlord for failure to disclose hidden defects is predicated on fraud and deceit. Manifestly, a man cannot be guilty of fraudulently concealing a fact of which he has no knowledge. The doctrine of this case has been criticised and held unsound in the following cases: Shinkle W. & K. Co. v. Birney, 68 Ohio St. 328, 67 N. E. 715; O'Malley v. Twenty-Five Associates, 178 Mass. 555, 60 N. E. 387; Whitmore v. Orono Pulp & Paper Co., 91 Me. 297, 39 Atl. 1032, 40 L. R. A. 377, 64 Am. St. Rep. 229; Franklin v. Tracy, 117 Ky. 267, 77 S. W. 1113, 78 S. W. 1112, 63 L. R. A. 649.

Counsel for plaintiff have cited the first decision in Bailey v. Kelly, supra. It is apparent they overlooked, inadvertently no doubt, the fact that this case came before the Kansas court on a second appeal. In the last decision the court said:

"This case was before the court on the occasion of a former appeal, Bailey v. Kelly, 86 Kan. 911, 122 Pac. 1027, 39 L. R. A. (N. S.) 378. The action was commenced against a landlord to recover damages resulting from the death of his tenant's servant, who fell into a defectively covered cistern on the leased premises. The cistern was in a shed in the rear of the kitchen of a building used as a restaurant. The defect in the covering of the cistern existed at the time the premises were leased, was open to view, and the character of the covering was observed by the tenant when he took possession. The lease was without warranty and without covenant to repair, on the landlord's part. At the first trial the court sustained a demurrer to the plaintiff's evidence on the ground that the landlord rested under no liability. This court held otherwise, as indicated in paragraph 1 of the syllabus of the first opinion: 'Where a nuisance dangerous to life is created by the owner on his premises, or through his gross negligence is suffered to remain there, he cannot, by leasing the property to another, avoid his own liability to any person who is rightfully upon the premises, and who, without fault, is injured by reason of such nuisance; and this liability extends to a servant of the tenant, notwithstanding the tenant, by reason of his own fault or neglect or knowledge of the danger, could not have maintained an action against the owner for any injury suffered by himself.' * * *

"A majority of the members of the court are convinced that the former decision was wrong. That the former decision was substantially unsupported by authority and was rendered against the settled law of this country is clear. * * *

"The tenant may or may not invite third persons, servants, patrons, guests, and others upon the premises, as he pleases, but the landlord extends, and can extend, no such invitation, either expressly or by implication. He cannot himself enter upon the tenant's possession, even to repair, unless the right be reserved or permission obtained, much less grant licenses to others. The result is the negligence theory of liability, suggested in the syllabus of the former opinion, breaks down for lack of any legal duty on the landlord's part to sustain it.

"The principle upon which the lessor of premises is held liable to third persons for nuisances existing at the time the tenancy was created is this: The landlord having possession and control of his land, or the right to possess and control it, owes the public, who are suffering or must suffer from the nuisance, the duty to abate it, and must respond in damages for a breach of the duty. The duty and the liability are not satisfied by the simple act of leasing the premises and continue until the nuisance is abated. * * *

"When the condition of property is such that it does not impair the public safety, the landlord owes no duty to the public or to any member of the public to change the condition. When he comes to deal with a specific individual as a prospective tenant, he owes that individual no duty, except not to entrap him by concealing facts which ordinary inspection would not reveal, and he owes no other individual any duty at all. The landlord may in perfect good conscience offer his property, such as it is, to a tenant who takes it, such as it is, on satisfactory terms, just as the landlord and tenant did in this case. This is true, although buildings may be in tumbledown condition, excavations may be unguarded, or the premises may be otherwise uninhabitable or in unsafe condition for use. The only exception is that of property devoted to public use such as wharves, railroads, elevators, public halls, and the like. Negotiations having been fairly concluded, and possession having been given to the tenant, no obligation on the part of the landlord to safeguard or to repair remains unfulfilled. After that no obligation to repair arises during the tenancy, unless the landlord has contracted to do so."

We may assume the elevator with the safety device nailed back as it was at the time of the injury constituted a nuisance. It was a private elevator. There was no invitation, express or implied, to the public to use it. It was in the possession and under the control of a tenant by virtue of a lease, which not only did not require the defendants to repair, but expressly relieved them from that burden. The plaintiff was

upon the premises, not at the invitation of the defendants, but as the employee of the tenant, and his right to recovery was no greater than would have been the right of the tenant, had the injury occurred to it.

[9] To warrant a recovery the burden was upon the plaintiff to show that the defective condition existed at the time of the letting; that it was known to the defendants; that it constituted a latent danger and not an obvious one; and that the defendants failed to disclose the same to the Fruit Company. The lease was dated July 1, 1920. The injury occurred on August 7, 1920. There is nothing in the evidence from which the jury could have determined either the time when the blocks were nailed on to the elevator so as to prevent the safety device from functioning or who placed them there. There is no more reason to believe that it was done by the employees of the landlord than by the employees of the tenant. The record shows that Hanson and three other employees of the tenant were working on the building when the plaintiff commenced work, that plaintiff and his men used the elevator frequently, and that for a period of 10 days before the accident it was the only means of ingress to and egress from the second floor. The plaintiff might have called, or at least made an effort to produce, the lessee and its several employees and showed by them that they did not place the blocks in the safety device. This he did not do. Under the circumstances if the jury had been called upon to decide who was responsible for the blocking of the safety device they would have had to make a mere conjecture or guess, and the burden was upon plaintiff to produce not facts from which the jury might guess but facts from which they might reasonably find that the defective condition existed at the time of the making of the lease, or at least at the time the tenant took possession and control. The record is wholly wanting in any evidence from which the jury might have found that the defendants had actual knowledge of the defective condition and the record rather supports the conclusion that the defective condition was obvious rather than latent and obscure.

Therefore the lower court properly directed a verdict, and the judgment is affirmed.